Richard K. Walker (SBN 004159)
Robert L. Dysart (SBN 10850)
WALKER & PESKIND, PLLC
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236
rkw@azlawpartner.com
rld@azlawpartner.com
Phone: 480/483-6336
Facsimile: 480/483-6337

Dan K. Webb (admitted pro hac vice)
J. Erik Connolly (admitted pro hac vice)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
dwebb@winston.com
econnolly@winston.com
Phone: 312/558-5600
Facsimile: 312/558-5700
*Counsel for Defendant Maricopa County, Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>     v.<br><br>Maricopa County, Arizona; Maricopa County Sheriff's Office; and Joseph M. Arpaio, in his Official capacity as Sheriff of Maricopa County, Arizona,<br><br>          Defendants. | NO. CV12-00981-PHX-ROS<br><br>**DEFENDANT MARICOPA COUNTY'S RULE 12(b)(6) MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant Maricopa County moves the Court to dismiss all claims against it with prejudice (Counts I-VI) pursuant to Fed. R. Civ. P. 12(b)(6).  This motion is supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

The Complaint is an unprecedented action by Plaintiff.  Under Arizona law, the Sheriff is a separate constitutional officer with responsibility for law enforcement and

incarceration within Maricopa County. Maricopa County, acting through its Board of Supervisors, does not have authority to establish policies or practices in these areas. Nor does Maricopa County have authority to hire, fire, or dictate protocol to the Sheriff or the Maricopa County Sheriff's Office (MCSO). Nonetheless, Plaintiff claims that Maricopa County should be held liable for the discriminatory practices allegedly committed by the Sheriff and the MCSO and asks the Court to enter prohibitory and mandatory injunctions against the County. No court has ever authorized such an action against Maricopa County or any local government under §14141 (42 U.S.C. §14141), Title VI (42 U.S.C. §§2000d-2000d-7), or the Title VI regulations and assurances (28 C.F.R. §§42.101-42.112).[1]

The Court should dismiss the claims against Maricopa County for three reasons. First, Plaintiff asks the Court to impose a remedy that would hold Maricopa County accountable for, and require it to take action with respect to, matters that are beyond the bounds of its legal authority. Plaintiff asks the Court to enter an order requiring all Defendants (including Maricopa County) to refrain from committing the discriminatory practices alleged in the Complaint. Plaintiff also asks the Court to order all Defendants (including Maricopa County) to implement programs to prevent future discriminatory practices in the areas of law enforcement and incarceration. Pursuant to Arizona law, Maricopa County does not have the authority to act in these areas. That authority rests with the Sheriff. When a plaintiff seeks a remedy that the defendant cannot provide as a matter of law, the plaintiff lacks standing under Article III of the U.S. Constitution and the complaint must be dismissed as to that defendant.

Second, Plaintiff cannot state a claim against Maricopa County under §14141 and Title VI based on the alleged conduct of the Sheriff and the MCSO. Neither §14141 nor Title VI expressly authorize claims against a local government based on the actions of a separate constitutionally created officer (such as the Sheriff); and, no court has interpreted §14141 or Title VI as permitting a claim against a local government based on

---

[1] References to "Title VI" in this memorandum encompass Title VI, Title VI regulations, and Title VI assurances.

-1-

the respondeat superior doctrine. Maricopa County has been held liable in §1983 claims seeking monetary relief based on the actions of the Sheriff. But, Plaintiff is not bringing a claim under §1983 and is not seeking monetary relief. Plaintiff's request for injunctive relief—with which Maricopa County could not comply without violating Arizona law—makes it illogical and inappropriate to impose liability on the County based on allegations against the Sheriff or the MCSO.

Third, the Complaint fails to state a claim against Maricopa County under §14141 or Title VI based on allegations regarding the County's own conduct. If the Court concludes that Plaintiff cannot state a claim against Maricopa County based on the alleged actions of the Sheriff and the MCSO, the only remaining issue is whether the Complaint contains sufficient allegations regarding actions by the County itself. Maricopa County could theoretically violate §14141 or Title VI if the County engaged in a pattern or practice of discriminatory conduct. But, the Complaint contains no such allegations. The Complaint focuses almost entirely on allegations against the Sheriff and the MCSO. The absence of allegations against Maricopa County—separate and apart from the Sheriff and the MCSO—means the Complaint fails to state a claim against the County and demonstrates that the County should not be a defendant in this litigation.

### STATEMENT OF FACTS

The Complaint contains various allegations regarding alleged discriminatory practices by the Sheriff and the MCSO. However, it contains limited allegations regarding Maricopa County. The Complaint alleges that Maricopa County is responsible for funding and oversight of the MCSO. (Compl. ¶ 3.) The Complaint alleges that Maricopa County receives and distributes federal funds. (*Id*. ¶¶ 12, 153.) The Complaint alleges that Maricopa County contractually assured that the programs that received federal funds, including the MCSO, would comply with the U.S. Constitution. (*Id*. ¶¶ 12, 156, 158.) And, the Complaint alleges that Maricopa County failed to ensure that the MCSO's programs and activities complied with the U.S. Constitution. (*Id*. ¶ 3.) However, the Complaint does not identify any action taken by Maricopa County or its

1  Board of Supervisors that contributed to the alleged discriminatory conduct.  Nor does
2  the Complaint identify any action that Maricopa County or its Board, within the bounds
3  of their lawful authority, could have taken to prevent the alleged discriminatory conduct.

## ARGUMENT

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations set forth in the Complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  The Court should grant a Rule 12(b)(6) dismissal where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  For this reason, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (internal quotation marks and citation omitted).

**I.  The Court should dismiss the Complaint because Plaintiff lacks standing.**

Maricopa County does not deny that Plaintiff has authority to bring lawsuits against State and local governments to enforce §14141 and Title VI.  However, Plaintiff having the authority to bring such lawsuits does not mean that Plaintiff always has standing.  Here, Plaintiff lacks standing to assert claims against Maricopa County because, under Arizona law, Maricopa County does not have the legal authority to comply with the injunctive relief requested in the Complaint.  The "case or controversy" requirement of Article III of the U.S. Constitution is not satisfied when the defendant cannot comply with relief requested by the plaintiff.

**A. Article III of the U.S. Constitution requires dismissal if the Court cannot grant the relief requested in the Complaint.**

"Article III is the fundamental limitation on the judicial power of the United

-3-

1  States." *Gonzalez v. Gorsuch*, 688 F.2d 1263, 1269 (9th Cir. 1982) (J. Wallace,
2  concurring). "Article III ensures that legal questions are decided by the courts only in
3  situations presenting that 'concrete adverseness' which sharpens the issues and promotes
4  realistic, informed decisionmaking and prevents the courts from overreaching their
5  proper, limited role in our democratic society." *Id*. (internal citations omitted). Article
6  III defines the essential role of the judiciary by "prohibiting the exercise of judicial
7  authority merely for 'the ventilation of public grievances.'" *Id*. (quoting *Valley Forge*
8  *Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464,
9  473 (1982)).

10  Article III requires the plaintiff to establish that it has standing. *See Lujan v.*
11  *Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Allen v. Wright*, 468 U.S. 737, 750-51
12  (1984). This requirement means the plaintiff must satisfy three separate and distinct
13  elements. *Lujan*, 504 U.S. at 560-61. First, the plaintiff must have "suffered an injury in
14  fact—an invasion of a legally protected interest which is (a) concrete and particularized .
15  . . and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (internal
16  quotation marks and citations omitted). Second, the plaintiff must demonstrate a causal
17  nexus between the alleged injury and defendant's conduct. *Id*. Third, the court must
18  determine that it is likely that a favorable decision for the plaintiff would redress the
19  injury. *Id*. at 561.

20  The third element—redressability—is a constitutional element of standing.
21  *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979); *Simon v. E. Ky. Welfare*
22  *Rights Org.*, 426 U.S. 26, 38 (1976). "It is a prerequisite of justiciability that judicial
23  relief will prevent or redress the claimed injury, or that there is a significant likelihood of
24  such redress." *Gonzalez*, 688 F.2d at 1267. "Redressability requires an analysis of
25  whether the court has the power to right or to prevent the claimed injury." *Id*. A plaintiff
26  lacks standing "if the court is unable to grant the relief that relates" to the alleged injury
27  suffered by the plaintiff. *Id*.

28  A threshold issue for the Court, therefore, is whether it can grant the equitable

relief requested by Plaintiff in the Complaint. The Court should dismiss the Complaint against Maricopa County for lack of standing if the County lacks authority to comply with the relief requested. *See Gonzalez*, 688 F.2d at 1268 (affirming dismissal because injunctive relief would not remedy the alleged harm); *Todd v. Peterson*, No 2:04-CV-984, 2009 WL 793011, at *5 (D. Utah Mar. 23, 2009) (dismissing §1983 claim against one of the defendants because defendant did not have the authority to grant the injunctive relief plaintiff requested); *Sims v. Lay*, No. 5:04cv00224, 2008 WL 2783469, at *3 (E.D. Ark. July 16, 2008) (dismissing §1983 claim at summary judgment because defendant did not have the authority to provide the injunctive relief plaintiff requested); *Cross v. Boston Market Corp.*, No. 07cv486, 2007 WL 6196071, at *3 (S.D. Cal. May 30, 2007) (dismissing ADA claim because defendants no longer controlled the property at issue and therefore could not provide the injunctive relief plaintiff requested).[2]

### B. Maricopa County lacks authority to provide the relief requested in the Complaint.

The Sheriff is a constitutionally independent officer established by Arizona law. *See* Ariz. Const. art. XII, §§3-4 (providing that there shall be created in and for each County of the State a Sheriff and that the Sheriff's duties and powers shall be prescribed by law). The Sheriff is responsible for law enforcement within the County. A.R.S. §11-441(A)(1), (2) ("The sheriff shall . . . [p]reserve the peace [and a]rrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense."). The Sheriff is also responsible for maintaining jails within the County. *Id.* §11-441(A)(5) ("The sheriff shall . . . [t]ake charge of and keep the county jail . . . and the prisoners in the county jail."). The Sheriff is elected by the citizens of Maricopa County every four years. Ariz. Const. art. XII, §3.

Maricopa County is a constitutional "body politic and corporate," *i.e.*, a political subdivision of the State. *See* Ariz. Const. art. XII, §1. Its existence is created, and its

---

[2] "Congress cannot by statute vest the federal courts with jurisdiction to hear lawsuits that do not present a case or controversy under Article III or that are otherwise not within the limited jurisdiction which Article III grants the federal courts." *Gonzalez*, 688 F.2d at 1270 (J. Wallace, concurring). "Congressional legislation can do no more than expand standing to the full extent permitted by Article III." *Id.* at 1271.

authority is granted and limited, by the State's constitution and the laws implementing it. *See* Ariz. Const. art. XII, §§3-4; A.R.S. §11-251; *Bd. of Supervisors of Apache Cnty. v. Udall*, 1 P.2d 343, 347 (Ariz. 1931). Under Arizona law, neither the County nor the Board of Supervisors has authority over the Sheriff or his deputies. *See* A.R.S. §11-251 (detailing the scope of the County's authority with no mention of authority over law enforcement and incarceration); *Hounshell v. White*, 202 P.3d 466, 470-71 (Ariz. App. 2008) (finding the county has neither the legal power to hire or terminate the Sheriff nor a right of control over the Sheriff in the performance of statutory duties). The County and Board cannot provide instructions to the Sheriff, control the actions of the Sheriff, or set law enforcement or incarceration policy. The Sheriff is solely responsible for those activities within the County pursuant to Arizona law. *See* A.R.S. §§11-251, 11-441.

The injunctive relief requested by Plaintiff falls outside the Board's and the County's authority. Plaintiff seeks a prohibitory and mandatory injunction. Plaintiff seeks an order requiring all Defendants (including the County) to "refrain from engaging in any of the predicate discriminatory acts forming the basis of the pattern or practice of unlawful conduct." (Compl. ¶ 192.) Plaintiff also seeks an order requiring all Defendants (including the County) to "adopt and implement policies, procedures and mechanisms to remedy the pattern or practice of unlawful conduct." (*Id*. ¶ 193.) The County lacks authority to comply with these injunctions under Arizona law. The Sheriff is the constitutionally established officer responsible for these issues within the County. Since the Complaint seeks relief against the County that is inconsistent with the County's constitutional authority, and the Court cannot issue an order requiring the County to violate Arizona law, the Complaint against the County should be dismissed.[3]

---

[3] Plaintiff also seeks a declaration that all Defendants (including Maricopa County) have "engaged in a pattern or practice" that violates §14141 and have subjected persons to discrimination in violation of Title VI. (Compl. ¶¶ 190-91.) The Court cannot issue such a declaration for the same reason that the requested injunctive relief is not appropriate. Maricopa County could not have engaged in such conduct in the areas of law enforcement and incarceration under Arizona law. Further, there are no allegations in the Complaint asserting that the County participated in any of the acts Plaintiff contends entitle it to declaratory relief.

## II. Plaintiff cannot state a claim against Maricopa County based on allegations regarding the Sheriff and Maricopa County Sheriff's Office.

Plaintiff apparently believes Maricopa County can be held liable under §14141 and Title VI for the alleged actions of the Sheriff and the MCSO. To support this theory, Plaintiff may argue that Maricopa County should be held vicariously liable for the Sheriff's conduct—thereby invoking the respondeat superior doctrine. Alternatively, Plaintiff may argue that Maricopa County should be held liable because the Sheriff is the policymaker within the County in the areas of law enforcement and incarceration. No court has ever adopted these arguments. It is illogical to hold Maricopa County liable for the actions of the Sheriff in a case seeking injunctive relief because Arizona law, not the County, empowered the Sheriff to act in the areas of law enforcement and incarceration within the County.

### A. Plaintiff cannot invoke the respondeat superior doctrine to hold Maricopa County liable for the alleged conduct of the Sheriff and the MCSO.

Plaintiff cannot rely on the respondeat superior doctrine (*i.e.*, vicarious liability) to establish a claim against Maricopa County. The respondeat superior doctrine is not a viable liability theory for claims under §14141 or Title VI. No published decision has ever held a local government liable under §14141 or Title VI based on the doctrine. And, even if the Court concluded that a local government could theoretically be liable based on the doctrine under certain circumstances, this is not the case that should be used to establish new law. The Sheriff's authority in the areas of law enforcement and incarceration is based on Arizona law, not any mandate or instructions from the County or Board of Supervisors. Vicarious liability is not appropriate where the principal does not empower or exercise control over the agent.

#### 1. Plaintiff cannot rely on the respondeat superior doctrine to establish a claim under §14141.

Congress passed §14141 as part of the Violent Crime Control and Law Enforcement Act of 1994. The statute allows the Attorney General to pursue injunctive relief against governmental authorities and others who engage in patterns and practices of unconstitutional police procedures. *See United States v. City of Columbus*, No.

-7-

2:99cv1097, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000). The statute provides:

> (a) Unlawful conduct
>
> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
>
> (b) Civil action by Attorney General
>
> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the patter or practice.

42 U.S.C. §14141. This is the totality of §14141. There is no direct legislative history on §14141. *City of Columbus*, 2000 WL 1133166, at *3. And, there is only one published opinion regarding whether the Attorney General can rely on the respondeat superior doctrine to assert a claim against a governmental authority. In that one case, the court concluded the Attorney General could not do so. *City of Columbus*, 2000 WL 1133166, at *9.

### a. *City of Columbus*, the only case to address the issue, rejected the use of respondeat superior as a basis for a §14141 claim.

In *City of Columbus*, plaintiff alleged that officers of the Columbus Division of the Police engaged in a pattern or practice of conduct violative of federal law and that the defendant city tolerated the alleged misconduct by failing to implement adequate policies, training, supervision, and monitoring procedures. *Id.* at *1-2. The plaintiff argued that §14141 authorized vicarious liability—*i.e.*, liability based on the respondeat superior doctrine—against the city. *Id.* at *7. The city disagreed, arguing that "to impose liability on the City of Columbus for—not its own misconduct—but for the alleged misconduct of police officers, is neither congruent nor proportional to the claimed constitutional violations." *Id*. The court agreed with the city and held that §14141 did not authorize vicarious liability.

-8-

The court in *City of Columbus* concluded that the language of §14141 does not "unambiguously contemplate the possibility of vicarious liability," which standing alone would have justified its decision. *Id*. at *8. However, the court went further by examining the legislative history of a provision of the Omnibus Crime Control Act of 1991, which was never promulgated but was considered by both parties to be §14141's predecessor. The court concluded that "such legislative history as exists [for §14141] manifests a congressional intent to conform its substantive provisions to the standards of § 1983." *Id*. Since a plaintiff cannot bring a §1983 claim based on vicarious liability, the court concluded that to construe §14141 as permitting such liability would "result in a dramatic expansion of liability and potential for litigation against local governments" without any evidence that Congress intended to do so. *Id*.

### b. The decision of the court in *City of Columbus* is consistent with the language of §14141.

The language used in §14141, as well as the language not used, supports the conclusion that a plaintiff cannot rely on vicarious liability. The statute makes it unlawful for a "***governmental authority***, or any agent thereof, or any person acting on behalf of a governmental authority, ***to engage*** in a pattern or practice of conduct . . . ." 42 U.S.C. §14141(a). The critical term—engage—means to "employ or involve oneself; to take part in; to embark on." BLACK'S LAW DICTIONARY (7th ed. 1991). The use of the term "engage" indicates that Congress intended for liability to attach to governmental authorities—like a county—only when they "take part in" the alleged improper conduct. If the governmental authority does not "take part in" the conduct, the Attorney General is authorized to pursue claims against the "agent" or "person acting on behalf of [the] governmental authority" who did engage in the conduct. 42 U.S.C. §14141(b).

Equally important as what the statute says, is what the statute does not say. Congress knows how to write a statute when it intends to create vicarious liability. *See*, *e.g.*, ADA, 42 U.S.C. §12111(5)(A) (imposing liability on "employers" and defining employers to include the "person engaged in an industry" and "any agent of such person"); ADEA, 29 U.S.C. §630(b) (same); Title VII, 42 U.S.C. §2000e(b) (same).

-9-

1  Congress could have written §14141 to prohibit "governmental authorities" from
2  engaging in improper conduct *and* defined governmental authorities to include its agents
3  and persons acting on behalf of governmental authorities. Such language would have
4  indicated Congress intended to impose vicarious liability. But, Congress did not do so.
5  The Court should not interpret §14141 to expand the scope of liability for governmental
6  authorities—based on vicarious liability—when the language of the statute does not
7  clearly support that outcome. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274,
8  283 (1998) (finding no vicarious liability under Title IX which, in contrast to Title VII,
9  did not contain a definitional section consistent with such intent); *see also Touche Ross &*
10 *Co. v. Redington*, 442 U.S. 560, 572 (1979) (finding no implied private cause of action
11 because "when Congress wished to provide a private damage remedy, it knew how to do
12 so and did so expressly").

### 2. Plaintiff cannot rely on respondeat superior to establish a claim under Title VI.

Title VI states that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. While recipients of federal financial assistance, like Maricopa County, can be liable if they enact a program or activity that violates Title VI, they cannot be held liable under Title VI based on vicarious liability.

### a. Courts have uniformly rejected reliance on the respondeat superior doctrine to establish liability under Title VI.

In contrast to the limited number of cases discussing liability under §14141, the question of whether a plaintiff can invoke respondeat superior to state a claim under Title VI has been addressed frequently. Courts have uniformly rejected attempts by plaintiffs to rely on the doctrine to state a Title VI claim. *See, e.g.*, *Vouchides v. Hous. Cmty. Coll. Sys.*, No. H-1-2559, 2011 WL 4592057, at *6 (S.D. Tex. Sept. 30, 2011) ("courts have consistently concluded that there is no claim for vicarious liability under Title VI"); *Griffin v. Spokane Pub. Sch. Dist.*, No. CV-100419, 2011 WL 613401, at *1 (E.D. Wash.

-10-

Feb. 15, 2011) ("[v]icarious liability is not a cognizable legal theory under Title VI"); *Santos v. Peralta Cmty. Coll. Dist.*, No. C-07-5277, 2009 WL 3809797, at *7 (N.D. Cal. Nov. 13, 2009) ("a theory of vicarious liability is not viable under Title VI"); *Hurd v. Del. State Univ.*, No. 07-117, 2008 WL 4369983, at *6 (D. Del. Sept. 25, 2008) ("an institution cannot be held vicariously liable for the actions of its staff" under Title VI).

The Equal Protection Clause of the Fourteenth Amendment is the basis for rejecting the use of vicarious liability for claims under Title VI. Liability under Title VI is coextensive with liability under the Equal Protection Clause. *See Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582, 610-11 (1983) (Powell, J., concurring in the judgment); *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978). The Equal Protection Clause prohibits only intentional or purposeful discrimination. *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Keyes v. Sch. Dist. No. 1*, 413 U.S. 189, 205, 208, 212-13 (1973). Thus, a defendant is liable under Title VI only when it acts with the requisite intent. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) ("Title VI itself directly reach[es] only instances of intentional discrimination." (internal quotation marks and citation omitted)). A plaintiff's reliance on vicarious liability is inconsistent with the Equal Protection Clause because it would permit a claim against the principal (*e.g.*, a local government) absent evidence of discriminatory intent on its part.

### b. Title VI assurances do not create a basis for imposing vicarious liability.

Plaintiff may argue that vicarious liability is appropriate because Maricopa County provided Title VI assurances when it received federal financial assistance. The assurance provided by Maricopa County was required by an administrative regulation established by the Department of Justice, which states:

> (a)   General. (1) Every application for Federal financial assistance to which this subpart applies, and every application for Federal financial assistance to provide a facility shall, as a condition to its approval and the extension of any Federal financial assistance pursuant to the application, contain or be accompanied by an assurance that the program will be conducted or the facility operated in compliance with all requirements imposed by or pursuant to this subpart. . . .
>
> (d) Continuing Federal financial assistance. Any State or State agency applying for continuing Federal financial assistance subject to this regulation shall as a

-11-

> condition for the extension of such assistance: (1) Provide a statement that the program is (or, in the case of a new program, will be) conducted in compliance with this regulation, and (2) Provide for such methods of administration as are found by the responsible Department official to give reasonable assurance that the primary recipient and all other recipients of Federal financial assistance under such program will comply with this regulation.

28 C.F.R. §42.105(a), (d). This assurance creates certain responsibilities in connection with the receipt of federal financial assistance. However, no court has held that the assurance changes the long-standing rule that the respondeat superior doctrine is not a viable theory for Title VI claims. *See*, *e.g.*, *United States v. City of Yonkers*, 888 F. Supp. 591, 600 (S.D.N.Y. 1995) (rejecting the argument that Title VI assurances supports vicarious liability).[4]

This Court should not take the unprecedented step of interpreting the Title VI assurances as authorizing vicarious liability. None of the Title VI regulations state that a recipient of federal financial assistance should be (or can be) held liable based on the actions of a sub-recipient. None of the regulations authorize a lawsuit against a recipient based solely on the respondeat superior doctrine. Interpreting the Title VI regulations as authorizing vicarious liability claims would dramatically increase the scope of liability for recipients of federal financial assistance. If that was the intent of the Title VI regulations, they needed to say so explicitly. The absence of explicit language in the Title VI regulations indicates the regulations were not intended to create a new category of liability against recipients of federal financial assistance.

Moreover, interpreting the Title VI assurances by Maricopa County as creating liability based on the conduct of the Sheriff or the MCSO would raise significant federalism issues. *Infra* at 13-15. Maricopa County did not have the legal authority to

---

[4] The Second Circuit reversed the District Court's decision on other grounds by finding that the State defendants could be held liable under §1983 and the Equal Educational Opportunity Act (EEOA). *United States v. City of Yonkers*, 96 F.3d 600, 619-21 (2d Cir. 1996). The Second Circuit held: "In light of our conclusions that the defendant State officials may be held liable under § 1983 and that the State, [State Education Department], and the Board of Regents may be held liable under the EEOA, we need not address plaintiffs' challenges to the district court's rejection of their claims under Title VI." *Id.* at 621. The district court's decision in *City of Yonkers* is the only published opinion addressing the implications of Title VI assurances on the viability of vicarious liability for Title VI claims.

1  force compliance with Title VI by the Sheriff or the MCSO.  The federal government
2  cannot, even in the context of federal grants, require an entity of the State or local
3  government to exceed its lawful powers.  Maricopa County could only provide assurance
4  to the fullest extent permitted by Arizona law.  Under these circumstances, the Court
5  should not interpret the Title VI regulations as imposing a requirement on Maricopa
6  County that exceeds its legal authority or authorize vicarious liability.

**3. Maricopa County is not liable pursuant to the respondeat superior doctrine as a matter of Arizona law.**

Even if Plaintiff could rely on the respondeat superior doctrine to establish liability under §14141 and Title VI, the Court should still reject application of the doctrine to Maricopa County.  As discussed above, Maricopa County lacks the constitutional authority to control the actions or conduct of the Sheriff in the areas of law enforcement and incarceration.  *Supra* at 5-6.  The Sheriff's authority in these areas is based on Arizona law, not independent decisions made by Maricopa County, which makes the respondeat superior doctrine inapplicable.

> When duties are imposed upon a county treasurer, or upon a board of county commissioners by law rather than by the county, the latter will not be responsible for their breach of duty or for their nonfeasance or misfeasance in relation to such duty.  Furthermore, where the duties delegated to officers elected by public corporations are political or governmental, the relation of principal and agent does not exist and the maxim "respondeat superior" does not govern.

57 Am. Jur. 2d, Municipal, School and State Tort Liability, §86, at 97-98 (1971).  Stated simply, if state law imposes a duty upon an officer within the county, the county is not acting as the officer's principal and, therefore, the county is not liable pursuant to the respondeat superior doctrine.  *Yamamoto v. Santa Cruz Cnty. Bd. of Supervisors*, 606 P.2d 28, 30 (Ariz. App. 1980).

Consistent with this rule, Maricopa County is not liable for the conduct of the Sheriff or the MCSO based on the respondeat superior doctrine.  *See Fridena v. Maricopa Cnty.,* 504 P.2d 58, 61 (Ariz. App. 172) ("having no right of control over the Sheriff or his deputies in service of the writ of restitution, [the County] is not liable under the doctrine of [r]espondeat superior"); *see also Hernandez v. Maricopa Cnty.*, 673 P.2d

-13-

341, 344 (Ariz. App. 1983) (respondeat superior doctrine cannot impute liability because "Maricopa County has no power to control the implementation and execution of [the duties of Justice of the Peace Phares]"); *Moore v. Maricopa Cnty.*, 466 P.2d 56, 60 (Ariz. App. 1970) (finding county not liable for injuries sustained by prisoner during jail work program because it did not exercise any control over the program or activities of inmates).

### B. Maricopa County cannot be held liable based on the Sheriff's status as a "policymaker" within the County.

Plaintiff may argue that Maricopa County should be held liable for the actions of the Sheriff because the Sheriff is the "policymaker" within the County on law enforcement and incarceration issues. Indeed, courts have held Maricopa County liable in §1983 claims seeking monetary relief based on this argument. *See*, *e.g.*, *Wilson v. Maricopa Cnty.*, 463 F. Supp. 2d 987, 991, 995 (D. Ariz. 2006) (denying summary judgment for County in §1983 claim). However, in this case, Plaintiff is not bringing a claim against Maricopa County under §1983 and does not seek monetary relief. Rather, Plaintiff is bringing claims under §14141 and Title VI for injunctive and declaratory relief. There is no precedent for holding Maricopa County liable for the alleged conduct of the Sheriff under these circumstances.

Since the statutes are silent on the issue, Plaintiff must ask this Court to interpret §14141 and Title VI as authorizing injunctive action against Maricopa County based on the alleged actions of the Sheriff as a "policymaker." "[W]hen a party seeks injunctive relief in federal court against a state or local government or governmental entity, concerns of federalism counsel respect for the 'integrity and function' of those bodies." *Signature Prop. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002) (quoting *Knox v. Salinas*, 193 F.3d 123, 129-30 (2d Cir. 1999)). "[T]he federal court must be cautious about issuing an injunction against a municipality," particularly when one of the injunctions sought is mandatory. *Id.* Plaintiff's attempt to bring an injunctive action against Maricopa County violates bedrock principals of federalism.

First, an injunctive action against Maricopa County is inconsistent with the

1  separation of powers established by Arizona law. Arizona law defines the respective
2  roles and responsibilities of the Sheriff and Board of Supervisors for the county. As
3  noted above, the Board can neither hire nor fire the Sheriff. *Supra* at 5-6. The Board
4  cannot discipline the Sheriff or set countywide policies in the areas of law enforcement or
5  incarceration. *Id.* Only the Sheriff can act in these areas as a matter of Arizona law.
6  Holding the County liable in an injunctive action based on a "policymaker" theory would
7  improperly blur the distinction between two separate, constitutionally established
8  bodies—the County, on one hand, and the Sheriff, on the other. *Rizzo v. Goode*, 423 U.S.
9  362, 378-79 (1976) (it is a "well-established rule that the Government has traditionally
10 been granted the widest latitude in the dispatch of its own internal affairs" (internal
11 quotation marks and citation omitted)); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S.
12 496, 500-01 (1941) ("[f]ew public interests have a higher claim upon the discretion of a
13 federal chancellor than the avoidance of needless friction with state policies").
14         Second, an injunctive action against Maricopa County would create a
15 constitutional crisis. Plaintiff asks the Court, under the auspices of §14141 and Title VI,
16 to issue prohibitory and mandatory injunctions against Maricopa County—asking the
17 Court to interpret these statutes as permitting the Court to issue binding orders on the
18 County to take action in the areas of law enforcement and incarceration. But, Maricopa
19 County cannot comply with such injunctions without violating Arizona law. *Supra* at 5-
20 6. Plaintiff's interpretation of §14141 and Title VI would improperly result in Maricopa
21 County being potentially bound by an injunction that is not within its authority to comply
22 with under Arizona law. *See O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) ("federal
23 court should not intervene to establish the basis for future intervention that would be so
24 intrusive and unworkable"); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of
25 Eng'rs*, 531 U.S. 159, 174 (2001) (interpreting a statute to "avoid . . . constitutional and
26 federalism questions" where there was no "clear statement from Congress" to the
27 contrary); *Burnett v. Dugan*, 618 F. Supp. 2d 1232, 1235 (S.D. Cal. 2009) ("the court
28 must ensure, out of federalism concerns, that the injunction 'heel[s] close to the identified

violation,' is not overly 'intrusive and unworkable . . . [and] would [not] require for its enforcement the continuous supervision by the federal court over the conduct of [state officers]." (internal citation omitted)).

Third, an injunctive action against Maricopa County is disproportionate to the alleged "misconduct" of the County. Statutes should not be interpreted in a manner that reflects a "lack of proportionality or congruence between the means adopted and the legitimate end to be achieved." *City of Boerne v. Flores*, 521 U.S. 507, 533 (1997); *see also Rizzo*, 423 U.S. at 378 ("the settled rule that in federal equity cases 'the nature of the violation determines the scope of the remedy'" (internal citation omitted)). "Strong measures appropriate to address one harm may be an unwarranted response to another, lesser one." *City of Boerne*, 521 U.S. at 530. Here, the Complaint contains no allegations regarding misconduct by Maricopa County; and, under Arizona law, Maricopa County could not have taken any action to prevent the events alleged in the Complaint. Accordingly, interpreting the statutes as authorizing injunctive action against Maricopa County would lack proportionality and congruence with the County's action. *See Milliken v. Bradley*, 433 U.S. 267, 281 (1977) ("federal-court decrees exceed appropriate limits . . . if they are imposed upon governmental units that were neither involved in nor affected by the constitutional violation").

For these reasons, the Court should not take the unprecedented step of interpreting §14141 and Title VI as authorizing an injunctive action against Maricopa County based on a "policymaker" theory. The fact that Maricopa County has been found liable for the Sheriff's conduct in §1983 claims seeking monetary relief is irrelevant. Maricopa County has monetary responsibility with respect to the Sheriff. *See* A.R.S. §11-444(b), (c). Since Maricopa County pays monetary damages awarded against the Sheriff, holding the County liable in §1983 claims seeking monetary relief does not cause the federalism problems described above. It is the injunctive nature of Plaintiff's claims under §14141 and Title VI that makes imposing liability under a "policymaker" theory inappropriate.[5]

---

[5] If the Court concludes that the Complaint fails to state a claim against the Sheriff and the MCSO, the claims against Maricopa County should likewise be dismissed regardless

-16-

III. **The Complaint fails to state a claim against Maricopa County based on allegations regarding its own conduct.**

The fact that Maricopa County cannot be held liable under §14141 and Title VI based on the alleged conduct of the Sheriff and the MCSO does not mean the County could never be liable under the statutes. Maricopa County could theoretically be liable under §14141 or Title VI if the County itself engaged in a pattern or practice of discriminatory practice, actively participated in such practices with another governmental agency, or was deliberately indifferent to discriminatory practices in areas where the County was legally empowered to act. However, the Complaint contains no allegations suggesting that Maricopa County engaged in such action, was deliberately indifferent, or had any authority to intercede and take the action the Complaint indicates Plaintiff thinks should have been taken. Accordingly, the Complaint does not state a claim against Maricopa County based on its own conduct.

## CONCLUSION

For these reasons, Maricopa County respectfully requests the Court to dismiss all claims against it with prejudice.

DATED: June 21, 2012.

        By /s/Richard K. Walker
           Richard K. Walker
           Robert L. Dysart
           SGA Corporate Center
           16100 North 71st Street, Suite 140
           Scottsdale, AZ 85254-2274
           Attorneys for Defendant Maricopa County

        By /s/ Dan K. Webb
           Dan Webb
           Erik Connolly
           Winston & Strawn LLP
           35 W. Wacker Drive
           Chicago, IL  60601-9703
           Attorneys for Maricopa County, Arizona

---
of whether the Court concludes that the County can be held liable based the actions of the Sheriff or the MCSO.

-17-

NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2012, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of the same document to the following CF/ECF registrants:

Winsome G. Gayle
Winsome.gayle@usdoj.gov
Thomas E. Perez
Roy L. Austin, Jr.
Jonathan M. Smith
Sergio Perez
Sergio.perez@usdoj.gov
Jennifer L. Mondino
Jennifer.mondino@usdoj.gov
Edward G. Caspar
Edward.g.caspar@usdoj.gov
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Avenue, N.W., Room 4037
Washington, D.C. 20530
*Attorneys for Plaintiff*

Scott Huminski
2624 S. Bahama Drive
Gilbert, AZ  85295
S_huminski@live.com
*Movant/Putative Plaintiff-Intervenor, Pro Se*

Jonathan Lee Riches
143 Roebling Street, Ste 5
Brooklyn, NY 11211
*Movant/Putative Plaintiff-Intervenor, Pro Se*

Joseph J. Popolizio
jpopolizio@jshfirm.com
William R. Jones, Jr.
wjones@jshfirm.com
John T. Masterson
jmasterson@jshfirm.com
Jones Skelton & Hochuli, PLC
2901 N. Central Avenue, Suite 800
Phoenix, AZ  85012
*Attorneys for Maricopa County Sheriff's Office and Sheriff Joseph Arpaio*

/s/ Michelle Giordano