Mark Kappelhoff
  Deputy Assistant Attorney General
Jonathan M. Smith (DC Bar No. 396578)
Edward G. Caspar (MA Bar No. 650566)
Jennifer L. Mondino (NY Bar No. 4141636)
Paul Killebrew (LA Bar No. 32176)
T. Jack Morse (GA Bar No. 449134)
Puneet Cheema (CA Bar No. 268677)
Brian Buehler (NY Bar No. 4893665)
U.S. Department of Justice, Civil Rights Division
Special Litigation Section
601 D St. NW, 5th Floor
Washington, D.C. 20004

Attorneys for the United States

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>Maricopa County, Arizona; and Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona,<br><br>　　　Defendants. | No. 2:12-cv-00981-ROS<br><br>UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Since at least 2007, Defendant Arpaio and the Maricopa County Sheriff's Office (MCSO) have engaged in an unprecedented abuse of power involving widespread and systemic violations of civil rights guaranteed by the United States Constitution and Federal law.  The Maricopa County Board of Supervisors let this County official and County agency engage in this conduct and failed in its obligations to require that the Sheriff comply with civil rights laws.  The United States seeks to prevent the Defendants' unlawful conduct, and to implement remedies that will ensure that the Defendants engage in constitutional policing practices.

A key issue pled in the United States' complaint is not just an allegation, but has been established as fact by the United States District Court in parallel litigation. A judgment has already been entered against the Sheriff concluding that he and the other County employees under his control engaged in intentional discrimination of Hispanic persons during traffic stops conducted in connection with immigration-related law enforcement actions. See Melendres v. Arpaio, 989 F. Supp. 2d 822, 899 (D. Ariz. 2013). The court concluded that this conduct by the Sheriff and County employees violates Federal law. Thus, the United States is entitled to judgment on its discriminatory policing claims in this case as a matter of law. The United States therefore moves for an order granting summary judgment in favor of the United States on those claims.

**Memorandum of Points and Authorities**

**I.      Background**

In December 2011, the United States notified the Defendants of the findings of its three-year investigation into the practices of the Maricopa County Sheriff's Office (MCSO). See United States' Statement of Facts ¶ 1 [hereinafter "SOF"]. That investigation focused on a variety of systemic constitutional violations, including intentionally discriminatory law enforcement practices (Claims 1, 3, and 5); a pattern or practice of unreasonable detentions by MCSO officers, particularly during worksite raids (Claim 2); discrimination against limited-English-proficient (LEP) Hispanic MCSO jail inmates in violation of Title VI of the Civil Rights Act of 1964 (Claim 4); and a pattern or practice of unconstitutional retaliation against critics of Defendant Arpaio (Claim 6). See id. ¶ 2. For over three months thereafter, the United States conferred with Defendants in this case in an attempt to reach a mutually agreeable resolution of these concerns. See SOF ¶ 3. When those efforts ultimately proved unavailing, the United States brought this civil action in May 2012. See Doc. 1, Complaint.

In a separate class action, private plaintiffs also sought relief against Defendant Arpaio and MCSO to address some of the same conduct that the United States' asserts in this action constitutes discriminatory policing: racial discrimination against Latinos

1   "under the guise of enforcing immigration law." Ortega-Melendres v. Arpaio, 836 F.

2   Supp. 2d 959, 969 (D. Ariz. 2011), aff'd sub nom. Melendres v. Arpaio, 695 F.3d 990

3   (9th Cir. 2012); see SOF ¶ 4.  The court in Melendres decided summary judgment

4   motions in December 2011, the same month that the United States notified the

5   Defendants of the results of its investigation.  See Ortega-Melendres, 836 F. Supp. 2d at

6   959; SOF ¶ 1.  Trial took place in July and August 2012.  See SOF ¶ 5.  The court in

7   Melendres issued its Findings of Fact and Conclusions of Law in May 2013, concluding

8   that "MCSO's use of Hispanic ancestry or race as a factor in forming reasonable

9   suspicion that persons have violated state laws relating to immigration status violates the

10  Equal Protection Clause of the Fourteenth Amendment." Melendres v. Arpaio, 989 F.

11  Supp. 2d 822, 899 (D. Ariz. 2013); SOF ¶¶ 6-7.  In October 2013, the court issued its

12  Supplemental Permanent Injunction / Judgment Order providing for injunctive relief

13  addressing the conduct at issue in that case.  See Melendres v. Arpaio, 2013 WL

14  5498218, Supplemental Permanent Injunction / Judgment Order (Oct. 2, 2013); SOF ¶ 6.

15  The Supplemental Permanent Injunction will remain in place until the defendants have

16  maintained full and effective compliance with its provisions for three years.  Melendres,

17  2013 WL 5498218, at *5, ¶ 3; SOF ¶ 6.  The implementation of the order is in its early

18  stages.  Defendant Arpaio has appealed that Order and seeks to reduce the scope of the

19  injunction.  SOF ¶ 10.  He does not appeal the holding that he and MCSO engaged in

20  intentional discrimination against Latinos during immigration-related law enforcement

21  operations sometimes called "saturation patrols." Id.  The appeal is pending.

22  **II.    Legal Standard for Summary Judgment**

23          A party may move for summary judgment as to particular claims, or a "part of

24  each claim," and "[t]he court shall grant summary judgment if the movant shows that

25  there is no genuine dispute as to any material fact and the movant is entitled to judgment

26  as a matter of law." Fed. R. Civ. P. 56(a).  The Findings of Fact and Conclusions of Law

27  in Melendres v. Arpaio, together with other facts not in dispute, establish all of the

28  elements of the United States' discriminatory policing claims, Claims 1, 3, and 5 of the

3

1 Complaint in this case.  The United States therefore is entitled to judgment as a matter of

2 law on those claims.  Fed. R. Civ. P. 56(a).

3 **III.   The United States Is Entitled to Summary Judgment on Its Discriminatory**

4 **Policing Claims against Defendant Arpaio.**

5 Claims 1, 3, and 5 of the United States' Complaint seek relief from racially

6 discriminatory MCSO policing practices that deprive persons of rights protected by the

7 Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United

8 States Constitution, in violation of the Violent Crime Control and Law Enforcement Act

9 of 1994, 42 U.S.C. § 14141 (Claim 1), Title VI of the Civil Rights Act of 1964 (Claim 3),

10 and the contractual assurances signed by the Defendants (Claim 5).  Common to these

11 three discriminatory policing claims is that MCSO officers engaged in law enforcement

12 practices with the intent to discriminate against Hispanic individuals.  Intentional

13 discrimination on the basis of race or ethnicity violates the Fourteenth Amendment and

14 Title VI.  See Alexander v. Sandoval, 532 U.S. 275, 280 (2001) (Title VI); Vill. of

15 Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) (Equal

16 Protection); Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993)

17 (noting that the analysis of a discrimination claim under Title VI duplicates the analysis

18 under the Equal Protection Clause).

19 **A. Defendant Arpaio Is Precluded from Contesting that MCSO Officers**

20 **Engaged in Intentionally Discriminatory Law Enforcement Practices.**

21 After vigorously contested litigation in Melendres v. Arpaio, the District Court in

22 that case found "an institutionalized consideration of race in MCSO operations" aimed at

23 enforcing state laws relating to immigration, and held that "MCSO's use of Hispanic

24 ancestry or race as a factor in forming reasonable suspicion that persons have violated

25 state laws relating to immigration status violates the Equal Protection Clause of the

26 Fourteenth Amendment."  Melendres, 989 F. Supp. 2d at 899; SOF ¶¶ 7-8.  Issue

27 preclusion bars Defendant Arpaio from contesting that issue in this case.

28

4

Offensive issue preclusion appropriately applies even if the plaintiff was not a party to the prior action "where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case." Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 775 (9th Cir. 2003);see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-33 (1979) (endorsing non-mutual issue preclusion where defendant had full opportunity to litigate the issue in the prior action.)  In addition, the application of issue preclusion must not be unfair, as the Supreme Court explained in Parklane Hosiery.  439 U.S. at 330-31.

All the conditions exist here for the application of issue preclusion to the determination that "MCSO's use of Hispanic ancestry or race as a factor in forming reasonable suspicion that persons have violated state laws relating to immigration status violates the Equal Protection Clause of the Fourteenth Amendment."  Melendres, 989 F. Supp. 2d at 899.

**1.  Identity of issues.**  First, the issue determined in Melendres is at issue in this case.  In Kamilche Co. v. United States, 53 F.3d 1059 (9th Cir. 1995), the Ninth Circuit identified certain factors bearing on the determination of whether an issue is sufficiently similar to one previously litigated.  See id. at 1062.  Those factors pertinent here are (a) whether "the claims involved in the two proceedings" are "closely related," (b) whether there is "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first," and (c) whether "the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding."  Id.  Consideration of these factors establishes that the issue decided in Melendres also is at issue in the United States' discriminatory policing claims. First, the claims involved in the two proceedings are "closely related" because both cases seek relief from discriminatory policing by MCSO based on the same kind of conduct. As the court in Melendres explained in deciding summary judgment motions, the

5

1    plaintiffs there "allege[d] that under the guise of enforcing immigration law, MCSO

2    officers are in fact engaged in a policy of racially profiling Latinos." Ortega-Melendres,

3    836 F. Supp. 2d at 969.  Likewise, the United States' Complaint in this case alleges,

4    among other things, "[u]nconstitutional and unlawful targeting of Latinos, because of

5    their race . . . in connection with purported immigration and human smuggling law

6    enforcement activities."  Doc. 1, Complaint, ¶ 22(a).

7         Second, there is "a substantial overlap between the evidence or argument to be

8    advanced in the second proceeding and that advanced in the first." Kamilche Co., 53

9    F.3d at 1062.  The conduct at issue in Melendres is a subset of the conduct that the United

10   States' asserts in its discriminatory policing claims.  The United States asserts that MCSO

11   officers engaged in law enforcement practices with the intent to discriminate against

12   Latino persons on the basis of their race, color, or national origin.  See Doc. 1,

13   Complaint, at 27-30 (Claims 1, 3, and 5).  Part of that discriminatory policing, as set out

14   in the Complaint, is that MCSO law enforcement practices included the traffic stops

15   conducted in connection with purported immigration and human smuggling law

16   enforcement activities, including "crime suppression operations," id. at ¶ 22, 50-60,

17   during which the officers unlawfully relied on race, color, or national origin, id. at ¶¶ 25,

18   34, 54.  These same law enforcement practices—so-called "saturation patrols"—were at

19   issue in Melendres.  See 989 F. Supp. 2d at 831-46 (discussing the "saturation patrols");

20   id. at 831 (explaining that in MCSO's "saturation patrols,' "MCSO officers would

21   conduct traffic enforcement operations with the purpose of detecting unauthorized aliens

22   during the course of normal traffic stops"); id. at 840 (discussing MCSO documents

23   referring to saturation patrols as "crime suppression operations").  And they were part of

24   the basis for the court's determination that there was "an institutionalized consideration

25   of race in MCSO operations" aimed at enforcing state laws relating to immigration, and

26   that "MCSO's use of Hispanic ancestry or race as a factor in forming reasonable

27   suspicion that persons have violated state laws relating to immigration status violates the

28

1  Equal Protection Clause of the Fourteenth Amendment." <u>Melendres</u>, 989 F. Supp. 2d at
2  899; SOF ¶ 9.
3        Lastly, because of the overlap in the evidence and conduct at issue, as to the
4  discriminatory policing claims, the two cases "involve the application of the same rule of
5  law," <u>Kamilche Co.</u>, 53 F.3d at1062, that is, the Equal Protection Clause of the
6  Fourteenth Amendment and Title VI of the Civil Rights Act of 1964.  <u>See</u> Doc. 1,
7  Complaint, at 27-30 (Claims 1, 3, and 5); <u>Melendres</u>, 989 F. Supp. 2d at 899, 901 n.93.
8        Thus, the issue determined in <u>Melendres</u>—that "MCSO's use of Hispanic ancestry
9  or race as a factor in forming reasonable suspicion that persons have violated state laws
10 relating to immigration status violates the Equal Protection Clause of the Fourteenth
11 Amendment," <u>Melendres</u>, 989 F. Supp. 2d at 899—is identical to an issue to be
12 determined in this case.
13      **2.  The issue was actually litigated and necessarily decided.**  The remaining
14 conditions for the application of issue preclusion are also met.  The issue was actually
15 litigated in <u>Melendres</u>, <u>see id.</u> at 825 et seq. (referencing trial of the matters), and the
16 issue was necessarily decided, <u>see</u> <u>Vill. of Arlington Heights</u>, 429 U.S. at 265 ("Proof of
17 racially discriminatory intent or purpose is required to show a violation of the Equal
18 Protection Clause."); <u>Sandoval</u>, 532 U.S. at 280 (holding that a showing of intentional
19 discrimination is necessary to establish a violation of Title VI in private rights of action).
20      **3.  Application of issue preclusion would not be unfair to Defendant Arpaio.**
21 Nothing about the application of issue preclusion here would be unfair to Defendant
22 Arpaio.  In <u>Parklane Hosiery</u>, the Supreme Court identified certain "circumstances that
23 might justify reluctance to allow the offensive use of collateral estoppel."  <u>Parklane</u>
24 <u>Hosiery</u>, 439 U.S. at 331.  Here, as in <u>Parklane Hosiery</u>, none of those circumstances are
25 present.  As in <u>Parklane Hosiery</u>, Defendant Arpaio "had every incentive to litigate the
26 [<u>Melendres</u>] lawsuit fully and vigorously," the judgment in <u>Melendres</u> is not inconsistent
27 with any other decision, and there are no "procedural opportunities" available in this case
28 that were not available in the <u>Melendres</u> case.  <u>Parklane Hosiery</u>, 439 U.S. at 332.

7

1  Additionally, the application of issue preclusion "will not here reward a private plaintiff

2  who could have joined in the previous action . . . ." Id. at 332. The United States is not a

3  private plaintiff and does not here have the same monetary incentives that private

4  plaintiffs have in the types of personal injury cases cited in Parklane Hosiery. See id. at

5  330 (citing Nevarov v. Caldwell, 327 P.2d 111, 115 (Cal. App. 1979); Reardon v. Allen,

6  213 A.2d 26, 32 (N.J. Sup. Ct. 1965)). This simply is not a case where the plaintiff

7  delayed to "wait and see" the result of a prior case: the United States completed its

8  investigation in December 2011 and filed the Complaint in May 2012, long before the

9  court ruled in Melendres in May 2013. See Doc. 1, Complaint (May 10, 2012); SOF ¶ 1.

10  Moreover, the Supreme Court has recognized that there should be no reluctance to

11  apply issue preclusion when joinder in the preceding litigation was impractical because of

12  "[t]he complicating effect of the additional issues and the additional parties" that such

13  joinder would have created. Parklane Hosiery, 439 U.S. at 332 n.17 (quoting SEC v.

14  Everest Mgmt. Corp., 475 F.2d 1236, 1240 (2d Cir. 1972)). The joinder of the United

15  States' claims in this case with those in Melendres would have complicated and

16  overwhelmed the litigation of the Melendres case at a time when discovery in that case

17  was already completed and the court had ruled on summary judgment. This is because,

18  in addition to asserting claims based on the discriminatory conduct at issue in Melendres,

19  the United States also seeks relief from three other systemic violations of federal law:

20  discriminatory language access failures in MCSO jails, a pattern of unconstitutional

21  retaliation against critics of Defendant Arpaio, and unreasonable detention practices

22  during worksite raids in violation of the Fourth Amendment. None of these matters was

23  at issue in Melendres, and they would have swamped the Melendres litigation to the

24  prejudice of the parties to that suit. As in Parklane Hosiery, there simply "is no

25  unfairness to [Defendant Arpaio] in applying offensive collateral estoppel in this case."

26  Parklane Hosiery, 439 U.S. at 332.

27  Finally, application of issue preclusion here would be consistent with the "dual

28  purpose" of collateral estoppel recognized by the Supreme Court, "of protecting litigants

8

from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  Parklane Hosiery, 439 U.S. at 326.  Applying issue preclusion to the intentional discrimination found in Melendres would relieve the parties and the court of having to litigate whether MCSO engaged in unconstitutional discrimination during its "saturation patrols," and will allow this case to focus on the evidence showing the broader scope of discrimination in traffic enforcement generally and the evidence concerning the three other patterns or practices of unlawful conduct at issue.[1]

**B.  The Issue Determined in Melendres, and other Facts Not in Dispute, Entitle the United States to Summary Judgment in Its Favor on the Discriminatory Policing Claims against Defendant Arpaio.**

**1.  First Claim for Relief.**  The United States bases its First Claim for Relief from Defendant Arpaio's discriminatory policing on the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.  See Doc. 1, Complaint, ¶ 167.  Section 14141 provides: "It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  42 U.S.C. § 14141.

First, there is no question that Defendant Arpaio is a "governmental authority" responsible for the conduct of law enforcement officers.  42 U.S.C. § 14141.  As Defendant Arpaio admitted in his Answer to the Complaint, he "is the Sheriff of Maricopa County and is responsible for the operation of MCSO, both in its policing and jail operations," SOF ¶ 11(a), and MCSO, "is a law enforcement agency in Maricopa County, Arizona that provides law enforcement throughout the County," SOF ¶ 11(b).

---

[1] Only after determining the full scope of Defendant Arpaio's discriminatory conduct will the Court be able to determine the full scope of necessary relief.

1       Second, the District Court in <u>Melendres</u> determined that MCSO's discriminatory

2   conduct "violates the Equal Protection Clause of the Fourteenth Amendment."  <u>Id.</u>  As

3   such, it "deprives persons of rights, privileges, or immunities secured or protected by the

4   Constitution or laws of the United States."  42 U.S.C. § 14141.

5       Finally, the discriminatory conduct held unlawful in <u>Melendres</u> constitutes "a

6   pattern or practice."  42 U.S.C. § 14141.  The words "pattern or practice" do not convey a

7   term of art but "reflect only their usual meaning."  <u>Int'l Bhd. of Teamsters v. United</u>

8   <u>States</u>, 431 U.S. 324, 336 n.16 (1977).  Thus, a "pattern or practice" involves more than

9   "the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts," but

10  rather a defendant's "standard operating procedure[;] the regular rather than the unusual

11  practice."  <u>Id.</u> at 336; <u>see</u> <u>Obrey v. Johnson</u>, 400 F.3d 691, 694 (9th Cir. 2005).  As

12  discussed above, the court in <u>Melendres</u> evaluated Defendant Arpaio's law enforcement

13  practices relating to MCSO "saturation patrols," <u>Melendres</u>, 989 F. Supp. 2d at 831, and

14  found an "institutionalized consideration of race in MCSO operations," <u>id.</u> at 899.

15  Ultimately, the court held that "MCSO's use of Hispanic ancestry or race as a factor in

16  forming reasonable suspicion that persons have violated state laws relating to

17  immigration status" violated the Fourteenth Amendment.  <u>Id.</u> at 899.  This clearly was a

18  "practice" and not an isolated occurrence.  <u>See id.</u> (describing the unlawful

19  "consideration of race" as "institutionalized").

20      The issue determined in <u>Melendres</u>, together with other facts not in dispute,

21  therefore establishes the elements of the United States' First Claim for Relief under

22  Section 14141, and entitles the United States to judgment in its favor on that claim.

23      **2. Third Claim for Relief**.  The United States' Third Claim for Relief is based on

24  Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, and its implementing

25  regulations, 28 C.F.R. §§ 42.104.  Doc. 1, Complaint, ¶ 175.  Title VI and its

26  implementing regulations prohibit discrimination against any person on the basis of race,

27  color, or national origin under "any program or activity receiving Federal financial

28  assistance."  42 U.S.C. §§ 2000d; <u>see</u> 28 C.F.R. §§ 42.104.  The term "program or

10

activity" means: "(i) A department, agency, . . . or other instrumentality of a State or of a local government; or (ii) The entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ."  28 C.F.R. § 42.102(d).

Intentional discrimination that violates the Equal Protection Clause, as found by the Court in Melendres, violates Title VI.  Elston, 997 F.2d at 1406; see Melendres, 989 F. Supp. 2d at 827, 901 n.93.  It is further beyond question that Defendant Arpaio is responsible for a "program or activity" subject to Title VI, as his office has received Federal financial assistance and is a "department, agency, . . . or other instrumentality of a State or of a local government," or is a "department or agency" to which Federal financial assistance has been distributed by another "instrumentality of a State or of a local government," namely, Maricopa County.  28 C.F.R. § 42.102(d).  Defendant Arpaio admitted in his Answer to the Complaint in this case that he "is the Sheriff of Maricopa County and is responsible for the operation of MCSO, both in its policing and jail operations," SOF ¶ 11(a); that MCSO, "is a law enforcement agency in Maricopa County, Arizona that provides law enforcement throughout the County," SOF ¶ 11(b); that MCSO "receives Federal financial assistance from the United States Department of Justice ("DOJ")," SOF ¶ 11(c); and that Defendant Maricopa County "has received grants from the DOJ Office of Justice Programs (OJP)," of which "MCSO has been and is a subrecipient."  SOF ¶ 11(d).  Defendant Arpaio further does not dispute that "[a]t all relevant times described in [the United States'] Complaint, the Defendants have been and continue to be recipients of federal financial assistance from the Department of Justice, either directly or through another recipient of federal financial assistance."  SOF ¶ 11(e).  These facts, together with the determination in Melendres that MCSO's consideration of race violates the Equal Protection Clause, establish Defendant Arpaio's violation of Title VI and its implementing regulations.  Summary judgment in favor of the United States on Claim 3 of the Complaint therefore is appropriate.

**3. Fifth Claim for Relief.**  The United States' <u>Fifth Claim for Relief</u> is based on the contractual assurances that Defendant Arpaio signed committing him to comply with the nondiscrimination provisions of Title VI.  Doc. 1, Complaint, ¶¶ 181-185.  Title VI directs Federal agencies to adopt regulations to effectuate the Act's prohibition against discrimination.  42 U.S.C. § 2000d-1.  The regulations adopted by the Department of Justice provide that each grant of Federal financial assistance shall include an assurance that the recipient and subrecipients will comply with Title VI and its implementing regulations.  <u>See</u> 28 CFR § 42.105(a), (b).  "As the Supreme Court has long recognized, the United States may attach conditions to a grant of federal assistance, the recipient of the grant is obligated to perform the conditions, and the United States has an inherent right to sue for enforcement of the recipient's obligation in court."  <u>United States v. Marion Cnty. Sch. Dist.</u>, 625 F.2d 607, 609 (5th Cir. 1980).

It is not disputed that Defendant Arpaio, as a condition of receiving Federal financial assistance, signed contractual assurances that he would comply with the requirements of Title VI and its implementing regulations.  <u>See</u> SOF ¶¶ 11(f), (g).  These facts, together with the determination in <u>Melendres</u> that MCSO's consideration of race violates the Equal Protection Clause, establish Defendant Arpaio's violation of the contractual assurances he made to comply with the nondiscrimination provisions of Title VI.  Summary judgment in favor of the United States on Claim 5 of the Complaint therefore is appropriate.

**IV.  The United States Is Entitled to Summary Judgment against Defendant Maricopa County on the Discriminatory Policing Claims.**

The issue determined in <u>Melendres</u>, together with other undisputed facts, establish not only Defendant Arpaio's liability on the United States' policing claims, but that of Defendant Maricopa County as well.

**A. Issue preclusion applies against the County.**

First, issue preclusion applies against Maricopa County, as it does against Defendant Arpaio.  MCSO was a defendant in the <u>Melendres</u> case, and MCSO is a part of

1  the County.  Arizona courts have found MCSO to be a non-jural entity on the premise

2  that, in suing or being sued, it does not have status "as a separate legal entity" from the

3  County.  Braillard v. Maricopa Cnty., 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010)

4  ("Although A.R.S. § 11–201(A)(1) provides that counties have the power to sue and be

5  sued through their boards of supervisors, no Arizona statute confers such power on

6  MCSO as a separate legal entity." (emphasis added)); id. (rejecting the argument that

7  "MCSO has 'admitted in court proceedings that it is a separate entity from the County.'"

8  (emphasis added)).  Indeed, the Court in this case already has held that MCSO is a non-

9  jural entity based on the holding in Braillard.  See United States v. Maricopa Cnty., 915

10  F. Supp. 2d 1073, 1077 (D. Ariz. 2012) (quoting Braillard).

11        Even if Defendant Maricopa County was not a party to the Melendres case when

12  the court determined that MCSO engaged in unconstitutional discrimination, issue

13  preclusion applies to it nonetheless because the County was in privity to Defendant

14  Arpaio and MCSO in that case.  See Washington Mut. Inc. v. United States, 636 F.3d

15  1207, 1216 (9th Cir. 2011) ("Collateral estoppel [or 'issue preclusion'] applies not only

16  against actual parties to prior litigation, but also against a party that is in privity to a party

17  in previous litigation.").  "Privity is a legal conclusion designating a person so identified

18  in interest with a party to former litigation that he represents precisely the same right in

19  respect to the subject matter involved."  United States v. Bhatia, 545 F.3d 757, 759 (9th

20  Cir. 2008) (internal quotation marks and citations omitted).  Courts have found the

21  relationship between parties "sufficiently close" for privity in several situations,

22  including when "a non-party['s] interests were represented adequately by a party in the

23  original suit."  In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997).  In addition, privity

24  exists where there is a "substantial identity" between the party and nonparty, or where the

25  interests of the nonparty and party are "so closely aligned as to be 'virtually

26  representative.'"  Schimmels, 127 F.3d at 881 (citations omitted).

27        All of these circumstances exist here.  The County's interests are wholly aligned

28  with those of Defendant Arpaio.  Defendant Arpaio vigorously litigated the claims in

13

Melendres, and his interests in doing so in no way diverge from the County's: as Maricopa County Sheriff, Defendant Arpaio is a County officer, A.R.S. § 11-401(A); Fridena v. Maricopa Cnty., 504 P.2d 58, 61 (Ariz. App. 1972), and the County is liable for his misconduct.  United States v. Maricopa County, et al., 915 F. Supp. 2d 1073, 1082-84 (D. Ariz. 2012); cf. LaFrance v. Kitsap Cnty., No. 07-cv-05347, 2008 WL 269009, *5 (W.D. Wash. 2008) (holding that "individual Sheriffs were in privity with the County inasmuch as the county can only act through its human representatives"); Braillard, 232 P.3d at 1269 n.2 ("Maricopa County pays its own debts, and it funds the Sheriffs official functions.  Whether the County or the Sheriff is liable is of no practical consequence.  One or both paths must be good, and they both lead to the same money." (quoting Payne v. Arpaio, 2009 WL 3756679, *6 (D. Ariz. 2009))).  For the purposes of issue preclusion, the conclusion that the County either was a party to the Melendres case through MCSO, or was in privity with Defendant Arpaio, is inescapable.

**B.   The Issue Determined in Melendres, and other Facts Not in Dispute, Entitle the United States to Summary Judgment in Its Favor on the Discriminatory Policing Claims against Maricopa County.**

As with the claims against Defendant Arpaio, the issue determined in Melendres, together with other facts not in dispute, establish the liability of Defendant Maricopa County for the United States' discriminatory policing claims.

**1.   Claims 1, 3, and 5.**  As to each of the United States' discriminatory policing claims (Claims 1, 3, and 5), establishing Defendant Arpaio's liability, as detailed above, establishes the County's as well, because Defendant Arpaio is an officer of Defendant Maricopa County and its final policymaker on law enforcement matters.  United States v. Maricopa County, et al., 915 F. Supp. 2d at 1082-84.  Additionally, the actions of MCSO deputies are the actions of County officers, because Arizona law regards MCSO as a County entity with no distinct legal identity.  See Braillard, 232 P.3d at 1269 (concluding that MCSO is a non-jural entity on the premise that state law does not give it the power to sue or be sued "as a separate legal entity" from the County).

**2. Claim 5.**  Additionally, as to the United States' Fifth Claim for Relief, the County is liable because it violated its contractual assurances to require that Defendant Arpaio and MCSO comply with Title VI and its implementing regulations prohibiting discrimination by MCSO.  The County does not dispute that it and Defendant Arpaio "received and continue to receive federal financial assistance for their programs and activities," SOF ¶ 12(a); that "MCSO receives federal financial assistance from the DOJ both directly and as a subrecipient of Maricopa County," SOF ¶ 12(b); that the County "has received grants from the DOJ Office of Justice Programs (OJP)," of which "MCSO has been and is a subrecipient," SOF ¶ 12(c) (emphasis added); that "it has signed contractual assurances in connection with the County's receipt of federal financial assistance," SOF ¶ 12(d); that "[a]s a condition of receiving funds [from the Department of Justice], it has been required to provide assurances of its compliance with the nondiscrimination requirements of, inter alia, Title VI of the Civil Rights Act of 1964 and its Department of Justice implementing regulations," SOF ¶ 12(e); that "Title VI and its implementing regulations prohibit intentional discrimination on the grounds of race, color, or national origin in any of a grant recipient's or subrecipient's operations," SOF ¶ 12(f) (emphasis added); and that "it has executed contractual assurances required by the federal government," SOF ¶ 12(g).  It is further undisputed that the contractual assurances signed by the County and in effect from 2008 to 2016 provide that the County "will comply (and will require any subgrantees or contractors to comply) with any applicable statutorily-imposed nondiscrimination requirements," including Title VI.  SOF ¶ 13.

The undisputed facts therefore establish that the County promised not only that it would comply with the nondiscrimination provisions of Title VI, but that it would require its subrecipient, Defendant Arpaio, to comply as well.  See SOF ¶¶ 12(c) – (g), 13.  The intentionally discriminatory law enforcement practices found by the District Court in Melendres violate the nondiscrimination provisions of Title VI and the contractual assurances made by the County.  These undisputed facts, together with the issue

1  determined in <u>Melendres</u>, entitle the United States to judgment in its favor on Claim 5 for

2  the County's breach of its contractual assurances.

3                                          **<u>Conclusion</u>**

4          The determination in <u>Melendres</u> that MCSO violated the Equal Protection Clause

5  by engaging in intentional racial discrimination in its law enforcement practices, together

6  with the undisputed facts outlined above, establish the Defendants' liability for the

7  United States' discriminatory policing claims, Claims 1, 3, and 5 of the Complaint.

8  Summary judgment in favor of the United States on those claims therefore is appropriate.

9  Going forward, trial will focus on issues not determined in <u>Melendres</u>, including the

10 degree to which MCSO's discriminatory conduct infected its general enforcement of the

11 traffic laws, its worksite raids, and its jail operations; whether Defendants have engaged

12 in a pattern or practice of retaliation against Defendant Arpaio's critics, in violation of the

13 First Amendment; and whether Defendants engaged in a pattern or practice of

14 unreasonable seizures during MCSO's worksite raids, in violation of the Fourth

15 Amendment.  Once the full scope of the Defendants' unconstitutional conduct is

16 determined, the Court can fashion appropriate remedies.  Additional remedies, beyond

17 those ordered in <u>Melendres</u>, will be necessary to address the unlawful conduct not at

18 issue in that case.

19                              Respectfully submitted,

20                              MARK KAPPELHOFF
21                              Deputy Assistant Attorney General

22                              Jonathan Smith
23                              Chief, Special Litigation Section

24                               /s/ Edward G. Caspar
25                              Edward G. Caspar (MA Bar No. 650566)
                               Jennifer L. Mondino (NY Bar No. 4141636)
26                              Paul Killebrew (LA Bar No. 32176)
27                              T. Jack Morse (GA Bar No. 449134)
                               Puneet Cheema (CA Bar No. 268677)
28                              Brian Buehler (NY Bar No. 4893665)

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel. (202) 514-2000/Fax (202) 514-6273
edward.g.caspar@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

CERTIFICATE OF SERVICE

I certify that on October 27, 2014, I used the Court's CM/ECF system to serve a true and correct copy of the foregoing filing on counsel of record.

/s/ Edward G. Caspar
EDWARD G. CASPAR