Mark Kappelhoff
 Deputy Assistant Attorney General
Judy Preston (MD Bar, no numbers assigned)
Timothy D. Mygatt (DC Bar No. 1021564)
Edward G. Caspar (MA Bar No. 650566)
Jennifer L. Mondino (NY Bar No. 4141636)
Paul Killebrew (LA Bar No. 32176)
Puneet Cheema (CA Bar No. 268677)
Matthew J. Donnelly (IL Bar No. 6281308)
U.S. Department of Justice
Civil Rights Division - PHB
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　Plaintiff,<br><br>　　v.<br><br>Maricopa County, Arizona; and Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona,<br><br>　　Defendants. | No. 2:12-cv-00981-ROS<br><br>**JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |

**INTRODUCTION**

Pursuant to the Court's July 21, 2015 Order, ECF No. 399, Plaintiff United States of America and Defendants Maricopa County and Sheriff Joseph M. Arpaio ("the Parties") provide this joint supplemental brief in support of their Joint Motion to Approve Settlement Agreement, ECF No. 391.

The Parties seek the Court's approval of the Settlement Agreement because they intend the Agreement to be subject to the Court's continued jurisdiction to enforce and to

be signed and entered by the Court as an order. *See* Settlement Agreement 6, ¶ 23, and 8, attached hereto with proposed order. The Ninth Circuit recently affirmed a district court's approval of such a settlement instrument as a "Settlement Agreement," *see United States ex rel. Lummi Nation v. Dawson*, 328 Fed. App'x 462, 463-64 (9th Cir. 2009) (published in the Federal Appendix, but not the Federal Reporter); s*ee also*, *e.g.*, Memorandum Opinion and Order, *United States v. City of Albuquerque*, 14-cv-1025, EFC No. 134 (D.N.M. June 2, 2015) (approving "Settlement Agreement" and entering it "as an Order of the Court"); Order Provisionally Approving Settlement Agreement, *United States v. City of Seattle*, 12-cv-1282, ECF No. 8 (W.D. Wash. Aug. 30, 2012). The Court noted in its July 21, 2015 Order that other cases have referred to such instruments (court-approved settlement agreements to be enforced as orders) as consent judgments or consent decrees. Order 1, July 21, 2015, ECF No. 399. Because the parties request that the Court approve the proposed Settlement Agreement, sign and enter it as an order, and retain jurisdiction to enforce it, the parties submit this Joint Supplemental Brief to set out how the Settlement Agreement meets the requirements for court approval. *See United States v. Oregon*, 913 F.2d 576, 580-81 (9th Cir. 1990) (addressing requirements for court approval of the "Columbia River Management Plan" as "a settlement agreement subject to continued judicial policing").

Pursuant to the Court's July 21, 2015 Order, the parties "must describe the process and circumstances under which the settlement was reached; explain how the provisions of the settlement address the claims the agreement purports to resolve; and address how the settlement serves the public's interest." Order 2-3, July 21, 2015, ECF No. 399. The Settlement Agreement merits the Court's approval because it represents a fair, adequate, and reasonable resolution of the United States' claims regarding a pattern or practice of detentions during worksite operations in violation of the Fourth Amendment ("Fourth Amendment claim") and retaliation in violation of the First Amendment ("First Amendment claim"). As noted in the Joint Motion to Approve Settlement Agreement, ECF No. 391, the Parties have reached a separate agreement that resolves the United

States' claims regarding MCSO's jails, and the Parties do not seek the Court's approval of or retention of jurisdiction with regard to that agreement. *Id.* at 1. In addition, the United States is currently seeking intervention in *Melendres v. Arpaio*, No. 07-CV-02513 (D. Ariz.), and, if intervention is granted, the United States will not seek further remedies in this case. Mot. to Stay Proceedings Pending a Decision on the United States' Mot. to Intervene in *Melendres v. Arpaio* 5, ECF No. 395.

The Settlement Agreement is the product of intensive, years-long negotiations that took place against the backdrop of heavily contested litigation and that reached conclusion shortly before trial, when all Parties were fully aware of the risks of going forward. The Agreement serves the public interest because it protects the public against unnecessary litigation and is fully consistent with the purposes of 42 U.S.C. § 14141 ("Section 14141"). The sections below expand on each of these points.

## I.     Process and Circumstances Under Which Settlement Was Reached

The Parties have engaged in extensive negotiations for a settlement of this case extending back to before the Complaint was filed. *See* Dec. 15, 2011 Findings Letter 3, ECF No. 287-1 (noting desire "to immediately begin a constructive dialogue about comprehensive and sustainable ways to remedy" alleged misconduct); Feb. 1, 2012 Letter from Joseph J. Popolizio 11, ECF No. 287-8 (noting meeting to take place on February 6, 2012 to discuss United States' Findings Letter); Apr. 9, 2012 Letter from Roy L. Austin, Jr. 3, ECF No. 287-11 (describing February 6, 2012 meeting); Second Joint Mot. Amend Court's Rule 16 Scheduling Order and Extend Time Complete Disc. ¶¶ 9, 17, Dec. 20, 2013, ECF No. 130 (noting multiple in-person settlement negotiations in November 2013); Joint Mot. Extend Time Complete Disc. ¶ 10, Sept. 13, 2013, ECF No. 108 (noting that the Parties had "been considering potential settlement opportunities presented by the court's ruling in *Melendres*"); Sept. 9, 2014 Status Hr'g Tr. 16:11-12 (counsel for the United States noting good-faith efforts to reach a settlement). While the Parties were not in continuous negotiations over the past three-and-a-half years, they have regularly conferred on settlement and have had numerous in-person and telephonic negotiation

sessions. The Parties estimate that they have collectively spent hundreds of attorney hours over dozens of days in negotiations, as well as many more hundreds of hours conferring with their clients and crafting settlement proposals. The final Settlement Agreement was submitted to the Maricopa County Board of Supervisors, which voted unanimously to enter into it.

These negotiations took place during heavily contested litigation by Parties who took sharply different views of the facts. Despite reaching a settlement, the Defendants disagree with the factual allegations in the United States' Complaint and admit to no wrongdoing. The Parties have had no shortage of disputes during the litigation, *see*, *e.g.*, statements of discovery disputes, ECF Nos. 94, 151, 209, 216, 232, 248, 287, 324, and they negotiated, as they litigated, at arm's length. The Parties reached a settlement less than a month before trial was set to begin and more than three years after the Complaint was filed, well after the close of discovery, at a point when all Parties were intimately familiar with the alleged misconduct and possible defenses. During the discovery process, the Parties deposed more than 60 witnesses, exchanged millions of pages of documents, subpoenaed evidence from numerous third parties, and sought to introduce testimony and exhibits from related litigation.

The specific claims resolved by the Settlement Agreement were subjected to especially extensive factual development: many depositions in this case involved the First and Fourth Amendment claims, the United States interviewed hundreds of witnesses related to these claims, and Defendant Arpaio produced many thousands of pages of documents related to the law enforcement activity underlying the claims. In addition, the Parties have fully briefed two sets of dispositive motions, each requiring the Parties to fully assess the legal and evidentiary basis for each claim. At this juncture, the Parties have had ample opportunity to develop and comprehend the factual record and their legal positions, giving them a clear picture of their chances of success on the merits. "[T]he extent of discovery completed and the stage of proceedings" are relevant considerations in determining whether a settlement is fair, reasonable, and adequate, and both

considerations weigh strongly in favor of settlement here. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977)) (listing factors that courts consider in the similar context of approving class action settlements).

The Parties are all sophisticated governmental entities, which is another factor that weighs in favor of settlement. *Officers for Justice*, 688 F.2d at 625 (listing class action factors). Similarly, "the experience and views of counsel" are also relevant considerations, *id.*, and the Parties and their attorneys all have extensive experience with this kind of case: both Defendants are parties in *Melendres v. Arpaio*, No. 07-cv-02513, which involves similar issues and was litigated through to trial, and the United States has reached settlements under Section 14141 with more than fifteen other law enforcement agencies. *See*, *e.g.*, Settlement Agreement, *United States v. City of Albuquerque*, No. 14-cv-1025, EFC No. 9-1 (D.N.M. Nov. 14, 2014); Agreement for Sustainable Reform of the Puerto Rico Police Department, *United States v. Puerto Rico*, No. 12-cv-2039, ECF No. 57-1 (D.P.R. July 17, 2013); Settlement Agreement, *United States v. Town of East Haven*, No. 12-cv-1652, ECF No. 2 (D. Conn. Nov. 20, 2012); Settlement Agreement, *United States v. City of Seattle*, No. 12-cv-1282, ECF No. 3-1 (W.D. Wash. July 27, 2012); Consent Decree, *United States v. City of New Orleans*, No. 12-cv-1924, ECF No. 159-1 (E.D. La. Jan. 11, 2013); Consent Decree, *United States v. Territory of the Virgin Islands*, No. 08-cv-158 (D.V.I. Mar. 23, 2009); Consent Judgment, *United States v. City of Detroit*, No. 03-72258 (E.D. Mich. June 12, 2003); Consent Decree, *United States v. City of Los Angeles*, No. 00-cv-11769 (C.D. Cal. Nov. 3, 2000); Consent Decree, *United States v. City of Pittsburgh*, No. 97-cv-354 (W.D. Pa. Feb. 26, 1997).[1]

---

[1] All of these documents can be accessed at http://www.justice.gov/crt/about/spl/findsettle.php#police and http://www.justice.gov/crt/about/spl/split_archive_findsettle_2004.php.

Each Party recognized that it bore some level of risk by proceeding to trial, and, regardless of its outcome, each Party recognized the significant resources of both Maricopa County and federal taxpayers that a trial of this case would consume.

The many rounds of negotiations and the thorough development of the factual record served to narrow the Parties' focus on the most important unresolved issues. In addition, changes in circumstances during the course of litigation made settlement desirable for all Parties. Most significantly, the Court in *Melendres v. Arpaio* entered a comprehensive injunction addressing the discriminatory policing found in that case. *See* Supplemental Permanent Inj., *Melendres v. Arpaio*, No. CV-07-02513-PHX-GMS, ECF No. 606 (D. Ariz. Oct. 2, 2013). That injunction was upheld in most respects by the Ninth Circuit Court of Appeals on April 15, 2015. *See generally Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).[2]

The *Melendres* injunction provides the kind of remedy that the United States has sought since reaching the findings of its investigation: comprehensive reforms addressing, *inter alia*, policy, training, accountability, field performance of deputies, and relationships between MCSO and the communities it serves. The ordered remedies also address the discriminatory policing allegations that are at the core of the United States' case. The Court's grant of summary judgment to the United States on its discriminatory

---

[2] At present, the Ninth Circuit's decision referenced in the text above remains subject to possible further review if any of the parties files, and succeeds in getting granted, a petition for writ of certiorari to the United States Supreme Court. In addition, the United States is aware of the fact that Sheriff Arpaio and his Chief Deputy filed a motion in *Melendres* seeking recusal or disqualification of the presiding Judge in that case, that said motion has recently been denied, and that the moving parties may file a petition for writ of mandamus to the Ninth Circuit. If such a petition were to be filed and granted and the presiding Judge in *Melendres* disqualified or directed to recuse himself, the parties in that litigation could move for some or all of his prior orders to be vacated. Finally, after the Ninth Circuit ordered that the County be joined as a party in the *Melendres* case, *see Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), the County timely filed a notice of appeal from the *Melendres* trial court judgment, and a briefing schedule for that appeal has been set.

6

policing claims, based on the ruling in *Melendres*, Order, June 15, 2015, ECF No. 379, significantly narrowed the issues remaining in dispute, which made settlement attainable.

Factors related to the specific claims resolved by the Agreement also encouraged settlement. With regard to the United States' First Amendment claim, violations at issue in this case have been the subject of numerous other lawsuits, many of which resulted in settlements. *See*, *e.g.*, Notice of Settlement, Dec. 23, 2013, *Donahoe v. Arpaio*, No. 2:10-cv-2756-VNM, ECF No. 1189 (D. Ariz.); Notice of Settlement, Dec. 23, 2013, *Lacey v. Maricopa County*, No. 2:08-cv-997-SRB, ECF No. 168 (D. Ariz.); Notice of Settlement, July 8, 2010, *Theilen v. Maricopa County*, No. 2:09-cv-2603-FJM, ECF No. 64 (D. Ariz.); Judgment, June 1, 2012, *Wilcox v. Arpaio*, No. 2:11-cv-473-NVM, ECF No. 39 (D. Ariz.). In addition, much of the alleged retaliatory conduct was previously investigated by the Pinal County Sheriff's Office, *see* Maricopa County Sheriff's Office Investigation report, *available at* http://www.azcentral.com/news/arpaio/ sheriff-joe-report.php, and the State Bar of Arizona, *see* Opinion and Order Imposing Sanctions, *In re: Andrew P. Thomas, et al.*, State Bar of Arizona, Case No. PDJ 2011-9002, *available at* http://www.azcourts.gov/Portals/201/Press%20Releases/2012/041012 ThomasAubuchonAlexander_opinion.pdf. In addition, the most recent retaliatory incident that is included within this lawsuit took place in 2010. Joint Mot. to Approve Settlement Agreement 4, ECF No. 391; Oct. 6, 2014 Status Hr'g Tr. 42:2-17 (statement of counsel for the United States).

Given the ways in which the incidents alleged in the United States' complaint have been addressed in other proceedings and venues, the Parties were encouraged to reach a settlement that embodies an ongoing commitment by MCSO to uphold First Amendment rights. The Parties were able to reach agreement on a specific statement that will be the policy of MCSO, that will be made known to all current and future MCSO employees and made applicable to them, and that will subject MCSO employees to discipline should they violate its terms. Settlement Agreement ¶¶ 19-22, attached hereto with proposed order.

1           With regard to the United States' Fourth Amendment claim, the Settlement
2    Agreement itself notes the factors that encouraged the Parties to pursue a settlement
3    rather than continued litigation. MCSO announced in December 2014 that it would no
4    longer enforce State identity theft laws relating to obtaining or continuing employment.
5    Settlement Agreement ¶ 10, attached hereto; Defs' Joint Mem. Regarding Court's
6    December 1, 2014 Order 2, *Puente Arizona v. Arpaio*, No. CV-14-01356-PHX-DGC,
7    ECF No. 132 (D. Ariz. Dec. 27, 2014) (stating that MCSO "no longer enforces A.R.S. §
8    13-2008(a) (employment provision) or A.R.S. § 13-2009(a)(3)"). MCSO also announced
9    that it would disband the Criminal Employment Unit, which had carried out the worksite
10   operations at issue in this lawsuit. Settlement Agreement ¶ 10; Def. Joseph M. Arpaio's
11   Notice to Court Regarding Disbandment of Criminal Employment Unit, *Puente Arizona*
12   *v. Arpaio*, No. CV-14-01356-PHX-DGC, ECF No. 131 (D. Ariz. Dec. 27, 2014)
13   (notifying Court "that the Criminal Employment Unit will be disbanded after the current
14   identity theft investigation concludes in the end of January or early February of 2015").
15   Soon thereafter, the United States District Court for the District of Arizona preliminarily
16   enjoined MCSO from enforcing those State identity theft laws on the ground that they
17   were preempted by federal law. Settlement Agreement ¶ 11; Order 42, *Puente Arizona v.*
18   *Arpaio*, No. CV-14-01356-PHX-DGC, ECF No. 133 (D. Ariz. Jan. 5, 2015) (enjoining
19   Defendant Arpaio "from enforcing A.R.S. § 2009(A)(3) and the portion of A.R.S. § 13-
20   2008(A) that addresses actions committed 'with the intent to obtain or continue
21   employment'"). MCSO disbanded the Criminal Employment Unit as planned on January
22   19, 2015 and has no plans to engage in the kinds of worksite operations at issue here.
23   Settlement Agreement ¶¶ 12-13.
24          Because the alleged conduct underlying the United States' Fourth Amendment
25   claim had ceased, and the unit within MCSO responsible for the alleged conduct has been
26   disbanded, the Parties were able to agree on a framework for settlement that made
27   resolution much simpler. Specifically, the Parties agreed that any obligations under the
28   settlement of the United States' Fourth Amendment claim would only come into effect if

Defendant Arpaio decides to re-initiate the kinds of law enforcement activity that gave rise to the United States' Fourth Amendment claim, which Defendant Arpaio currently has no plan to do.

The Parties arrived at the Settlement Agreement that is before the Court for approval over several years through an extensive, adversarial process. The circumstances under which they reached a settlement—shortly before trial, after significant developments both outside and within the litigation—strongly incentivized the Parties to reach a resolution before incurring the cost of a lengthy and resource-intensive trial.

## II. Resolution of the United States' Claims Under the Settlement Agreement

The Settlement Agreement before the Court is fully consistent with the purposes of Section 14141, which authorizes the Attorney General to seek "equitable and declaratory relief to eliminate [a] pattern or practice" of constitutional violations. 42 U.S.C. § 14141(b). Settlements under the statute are not designed to punish individual government officials or provide personal remedies to victims of police misconduct. Instead, Congress granted the Justice Department the authority to sue law enforcement agencies to correct the underlying policies that led to the misconduct. H.R. Rep. No. 102-242, at 137-38 (1991). Typically, the United States and specific law enforcement agencies reach a resolution of litigation under Section 14141 by committing to a set of reforms that will prevent future constitutional harms. *See*, *e.g.*, agreements cited *supra* at 5.

The Settlement Agreement embodies such a commitment. With regard to the United States' First Amendment claim, the Agreement requires MCSO to adopt a specific policy statement and ensure that all personnel are advised of the policy. Settlement Agreement ¶¶ 20-21, attached hereto with proposed order. This approach is consistent with Congress's intent in enacting Section 14141 and with the many other similar agreements reached by the United States, which frequently require changes to policy that will provide guidance to officers about their obligations to uphold the public's constitutional rights. *See*, *e.g.*, Settlement Agreement ¶ 15, *United States v. City of*

9

*Albuquerque*, No. 14-cv-1025, EFC No. 9-1 (D.N.M. filed Nov. 14, 2014) (requiring adoption of new use of force policy). The provisions of the Agreement addressing the First Amendment leave Defendants less discretion than is typical for these kinds of agreements in that MCSO is required to adopt a specific policy statement; other agreements merely require that law enforcement agencies adopt a policy that includes certain baseline criteria, but the actual language of the policy is left to the agency to craft. *See*, *e.g.*, *id.* (settlement agreement provision setting requirements for use of force policy). This resolution is tailored to the harms alleged by the United States because it focuses on the alleged failure of Defendant Arpaio to prevent MCSO personnel from engaging in retaliation in violation of the First Amendment.

With regard to the United States' Fourth Amendment claim, any decision by Defendant Arpaio to re-initiate the worksite operations that led to this lawsuit will trigger an obligation "to first establish written policies and protocols to ensure that [such operations] are conducted in compliance with all applicable laws and the United States Constitution." Settlement Agreement ¶ 14(a), attached hereto with proposed order. Those draft policies and protocols must be provided to the United States, and MCSO must consider the United States' feedback in good faith. *Id.* ¶ 14(b). MCSO must advise all personnel participating in worksite operations of the policies and protocols and must take measures to ensure that such personnel comply with them. *Id.* After any operation has taken place, MCSO must grant reasonable requests by the United States for information related to the operation, *id.* ¶ 16, and, if the United States identifies violations of federal law consistent with the allegations in this lawsuit, it will confer with the Defendants about its concerns. *Id.* ¶ 17. If the Parties are not able to reach a resolution and other criteria are met, including timeliness, the United States may bring a new civil action that seeks relief for worksite operations, and the factual basis for that action can include operations that took place before the Agreement was reached. *Id.*

Given that Defendant Arpaio has no current plans to carry out worksite operations, these provisions of the Settlement Agreement fully resolve the United States' Fourth

1  Amendment claim without involving the Parties in unnecessary disputes. In this way,
2  these provisions of the Settlement Agreement are tailored to the alleged harms identified
3  by the United States: should worksite operations begin again, they must do so with
4  guidance in the form of policies and protocols to prevent constitutional violations, and the
5  United States has the assurance that it could potentially bring a new lawsuit to vindicate
6  constitutional rights, if that ever became necessary. If Defendant Arpaio does not conduct
7  worksite operations in the future, the United States can be assured that the alleged pattern
8  or practice of constitutional violations will have ceased.
9        Both areas of the Settlement Agreement—the First and Fourth Amendments—
10  provide additional assurance that the claims will be resolved because the Parties will be
11  able to seek enforcement of the Agreement in this Court. As noted above, the Parties
12  intend for the terms of the Agreement to be enforced by the Court. Should disputes arise
13  in the future about the terms of the Settlement Agreement, the Parties will be able to
14  resolve them before this Court.

15  **III.  The Public Interest**

16        The Settlement Agreement serves the public's interest on numerous dimensions.
17  First and foremost, the Agreement promotes the public's interest in constitutional
18  policing by ensuring that MCSO personnel are guided by clear policies in areas where the
19  United States believes there have been problems in the past. *See Floyd v. City of New*
20  *York*, 959 F. Supp. 2d 691, 698 (S.D.N.Y. 2013) (noting public interest "'in having a
21  constitutional police force'") (quoting *United States v. City of New Orleans*, No. 12-cv-
22  1924, 2013 WL 492632 at *4 (E.D. La. Feb. 8, 2013)). Because the remedies in the
23  Settlement Agreement are tailored to the constitutional violations alleged by the United
24  States, and because the provisions related to the Fourth Amendment claim do not require
25  action unless Defendant Arpaio re-initiates worksite operations, the cost of the
26  Agreement to the public is no greater than necessary to bring this case to a resolution.
27  Finally, the Agreement spares the public the expense of a trial that the Parties anticipated
28  would last six to ten weeks, Joint Proposed Pretrial Order 48, ECF No. 386, not to

mention post-trial briefing and proceedings on any remedy that might have been ordered. *See Arthur v. Sallie Mae, Inc.*, No. 10-cv-198-JLR, 2012 U.S. Dist. LEXIS 3313 at *17-18 (W.D. Wash. Jan. 10, 2012) ("As a matter of express public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters."); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting, in class action context, "the strong judicial policy that favors settlements," especially of complex cases).

## CONCLUSION

All Parties believe that the Settlement Agreement is a fair and equitable resolution of this case and will benefit the people of Maricopa County. The Parties respectfully request this Court to enter the Agreement as an order of the Court, to retain jurisdiction over the Agreement, and to enforce its provisions if necessary. The Parties are submitting herewith a revised Proposed Order to satisfy the requirements of the Court's July 21, 2015 Order.

Respectfully submitted,

Mark Kappelhoff
Deputy Assistant Attorney General
Civil Rights Division

Judy Preston
Acting Chief, Special Litigation Section

Timothy D. Mygatt
Special Counsel

 /s/ Paul Killebrew
Edward G. Caspar (MA Bar No. 650566)
Special Counsel
Jennifer L. Mondino (NY Bar No. 4141636)
Paul Killebrew (LA Bar No. 32176)
Puneet Cheema (CA Bar No. 268677)
Matthew J. Donnelly (IL Bar No. 6281308)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division - PHB

950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Tel. (202) 514-2000/Fax (202) 514-6273
paul.killebrew@usdoj.gov

*Counsel for the United States of America*

WALKER & PESKIND, PLLC

By: /s/ Richard K. Walker
Richard K. Walker
Charles W. Jirauch
16100 N. 71st Street, Suite 140
Scottsdale, Arizona 85254-2236

WINSTON & STRAWN, LLP

By: /s/ Dan K. Webb
Dan K. Webb (admitted pro hac vice)
J. Erik Connolly (admitted pro hac vice)
35 West Wacker Drive
Chicago, IL 60601

*Counsel for Defendant Maricopa County*

JONES, SKELTON & HOCHULI, P.L.C.

By: /s/ John T. Masterson
William R. Jones, Jr.
John T. Masterson
Joseph J. Popolizio
2901 North Central Avenue, Suite 800 Phoenix, Arizona 85012

*Attorneys for Defendant Joseph M. Arpaio*