# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Maricopa County, et al.,<br><br>                Defendants. | No. CV-12-00981-PHX-ROS<br><br>**ORDER AMENDING JUDGMENT** |

      The Clerk of Court entered final judgment in favor of the United States on September 3, 2015. Almost one month later, Maricopa County filed a motion seeking to alter, amend, or correct that judgment. (Doc. 410). At its core, the motion argues Maricopa County cannot be held liable for the illegal actions of Maricopa County Sheriff Joseph Arpaio. Throughout this case, Maricopa County has repeatedly made some variant of this argument. The argument was rejected in the past and will be rejected again. However, the United States explicitly abandoned portions of certain counts. Therefore, the judgment will be amended to reflect the United States' partial victory and its decision to abandon all other portions of the remaining counts. The Court will also grant the United States' request to enter a signed copy of the settlement agreement on the docket.

      Accordingly,

      **IT IS ORDERED** the Motion to Amend (Doc. 410) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** the Judgment (Doc. 409) is **AMENDED** to state as follows:

> **IT IS ORDERED AND ADJUDGED** judgment is entered in favor of plaintiff United States on the portions of Counts One, Three, and Five based on the unconstitutional discrimination found in *Melendres v. Arpaio*, CV-07-2513-PHX-GMS (D. Ariz.). The portions of Counts One, Three, and Five not based on the unconstitutional discrimination found in *Melendres v. Arpaio*, CV-07-2513-PHX-GMS (D. Ariz.) are **DISMISSED WITH PREJUDICE**. Counts Two and Six are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** the Motion to Amend (Doc. 415) is **GRANTED**. The Court will sign and docket the parties' settlement agreement attached herewith, and the Clerk shall enter an amended judgment accordingly.

Dated this 6th day of November, 2015.

Honorable Roslyn O. Silver
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 2:12-cv-00981-ROS |
| Plaintiff, | |
| v. | SETTLEMENT AGREEMENT |
| Maricopa County, Arizona; and Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona, | |
| Defendants. | |

The parties to this Agreement, the United States of America, Joseph M. Arpaio, Sheriff of Maricopa County, and Maricopa County (collectively the "Parties"), enter into this Settlement Agreement ("Agreement") to resolve all claims related to worksite identity theft operations ("Worksite Operations") and claims relating to alleged retaliation ("Retaliation Claims") as set forth in, *inter alia*, the Second and Sixth Claims of the United States' Complaint in this action. The parties have reached a separate agreement that resolves the United States' Fourth Claim and that portion of any other claim addressing discrimination in MCSO jails. *See* Attachment A.

The Parties agree that this Agreement is in the best interests of the people of Maricopa County and the United States.

## I. DEFINITIONS

The following terms and definitions shall apply to this Agreement:

1. "Agreement" means this Agreement.

2. "Business," as used in Paragraph 9, below, means any business, organization, or other enterprise that employs people, is engaged in business activities or charitable services, and is involved in the provision of goods or services, or both.

3. "Complaint" means the Complaint filed in United States v. Maricopa County and Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County, Arizona, No. 2:12-cv-00981-ROS.

4. "Defendants" means Joseph M. Arpaio, Sheriff of Maricopa County, named in his official capacity; and Maricopa County.

5. "Effective Date of this Agreement" means the date on which this Agreement becomes effective pursuant to Paragraph 23, below.

6. "Identity theft," as used in Paragraph 9, below, means the crime of "taking identity of another person," as defined currently or prospectively by Arizona law, and as currently defined:

> A person commits taking the identity of another person or entity if the person knowingly takes, purchases, manufactures, records, possesses or uses any personal identifying information or entity identifying information of another person or entity, including a real or fictitious person or entity, without the consent of that other person or entity, with the intent to obtain or use the other person's or entity's identity for any unlawful purpose or to cause loss to a person or entity whether or not the person or entity actually suffers any economic loss as a result of the offense, or with the intent to obtain or continue employment.

Ariz. Rev. Stat. § 13-2008(A).

7. "MCSO" means the Maricopa County Sheriff's Office.

2

8. "United States" means the United States of America as represented by the United States Department of Justice's Civil Rights Division and its agents, employees, and consultants.

9. "Worksite Identity Theft Operation" means any pre-planned MCSO law enforcement operation at a place of business to execute a search warrant for evidence of, or for persons suspected of committing, identity theft or crimes incident thereto, such as forgery.

## II. SECOND CLAIM OF THE UNITED STATES' COMPLAINT AND ALLEGATIONS RE: WORKSITE OPERATIONS

10. On December 18, 2014, the MCSO announced that it would no longer enforce State identity theft laws relating to obtaining or continuing employment, namely A.R.S. sections 13-2008(A) (employment provision) and 13-2009(A)(3), and that it would disband its Criminal Employment Unit.

11. On January 5, 2015, in the case of Puente Arizona v. Arpaio, No. 14-cv-01356 (D. Ariz.), the United States District Court for the District of Arizona entered a preliminary injunction enjoining the Maricopa County Sheriff from enforcing those statutory provisions that address actions committed with the intent to obtain or continue employment.

12. On January 19, 2015, the MCSO disbanded its Criminal Employment Unit, which was responsible for investigating cases of identity theft relating to obtaining or continuing employment, and for planning and carrying out Worksite Identity Theft Operations.

13. MCSO is not now engaged, currently planning to engage, or currently intending to engage in any Worksite Identity Theft Operations.

14. Before any Worksite Identity Theft Operation targeting three or more suspects may occur after the Effective Date of this Agreement:

    a. Defendant Arpaio shall cause the MCSO to first establish a set of written policies or protocols to ensure that subsequent Worksite Identity

3

Theft Operations are conducted in compliance with all applicable laws and the United States Constitution; and

b. Defendant Arpaio will provide Plaintiff United States with draft policies and protocols regarding Worksite Identity Theft Operations, as described above, before MCSO finalizes them, and MCSO will consider in good faith any comments, suggestions, objections, and recommendations from the United States regarding those policies and protocols. Once MCSO finalizes policies and protocols regarding Worksite Identity Theft Operations, as described above, the MCSO shall ensure that all personnel participating in any subsequent Worksite Identity Theft Operations are advised of the applicable policies and protocols and MCSO will take reasonable measures designed to ensure that all MCSO personnel comply with such policies, and protocols in carrying out any Worksite Identity Theft Operations.

15. If a Worksite Identity Theft Operation occurs after the Effective Date of this Agreement, it must comply with all applicable laws, and the United States Constitution.

16. If a Worksite Identity Theft Operation occurs after the Effective Date of this Settlement Agreement, MCSO shall timely grant reasonable requests by the United States for information related to any such operation so that the United States may determine whether such operation was conducted consistent with Federal law and the United States Constitution. Such information shall include documents, data, and records, including any investigative reports and supplemental reports and any video or audio recordings relating to such operation.

17. The United States may bring a new civil action within two (2) years of the Effective Date of this Agreement seeking relief for alleged violations of federal law relating to any Worksite Identity Theft Operations that occurred prior to the Effective Date of this Agreement, but the United States may bring such a civil action only if: (a) a

Worksite Identity Theft Operation, as defined in Paragraph 9 of this Agreement, occurs after the Effective Date of this Agreement; (b) the United States first notifies the Defendants that the information it has obtained indicates that the Worksite Identity Theft Operation involves Fourth and Fourteenth Amendment violations that are consistent with the pattern or practice of Fourth or Fourteenth Amendment violations alleged in this case; (c) the United States attempts to confer with the Defendants to seek an agreement on specific actions MCSO can take to guard against constitutional violations in any future Worksite Identity Theft Operations; and (d) the Parties are unable, within 60 days of the United States' notification, to agree on such action or a Defendant fails to implement any such actions it has agreed to take. The United States may not bring such a civil action—an action seeking relief for alleged violations of Federal law relating to Worksite Identity Theft Operations that occurred prior to the Effective Date of this Agreement—after two (2) years of the Effective Date of this Agreement.

18. This Settlement Agreement does not affect the United States' authority to bring a civil action seeking relief for violations of federal law relating to Worksite Identity Theft Operations that occur *after* the Effective Date of this Agreement.

III. **SIXTH CLAIM OF THE UNITED STATES' COMPLAINT AND ALLEGATIONS RE: RETALIATION**

19. Within 30 days after the effective date of this Agreement, the Maricopa County Sheriff's Office (MCSO) will establish an official policy prohibiting retaliation against any individual for any individual's lawful expression of ideas in the exercise of the First Amendment right to the freedom of speech.

20. The Parties have agreed that the policy will read as follows:

> It is the policy of the Maricopa County Sheriff's Office to respect the First Amendment rights of all individuals. MCSO personnel will not take action against any individual in retaliation for any individual's lawful expression of opinions in the exercise of the First Amendment right to the freedom of speech.

5

21. MCSO will notify all MSCO personnel of this policy through the issuance of a briefing board and in any other way MCSO determines to be appropriate. MCSO will take reasonable steps to ensure all future MCSO personnel are advised of this policy, consistent with MCSO practices to advise new personnel of existing MCSO policies.

22. Through counsel, within 45 days after the Effective Date of this Agreement, Defendant Arpaio will provide the United States with an affidavit or sworn declaration by an MCSO employee with authority to speak on behalf of MCSO and Sheriff Arpaio confirming that MCSO has issued the policy and briefing board, and will provide copies of same to the United States.

## IV. EFFECTIVE DATE AND JURISDICTION

23. This Agreement shall become effective upon the signing of this Agreement by duly authorized representatives of Plaintiff United States, Defendant Sheriff Joseph Arpaio, Defendant Maricopa County, and by the Court. The Court will retain jurisdiction over this action for the purpose of enforcing compliance with the terms of this Agreement.

## V. SCOPE, IMPLEMENTATION AND ENFORCEMENT

24. The United States shall notify Defendants if it determines that a Defendant is not in compliance with the Agreement in any respect. The Parties shall first attempt to resolve any dispute informally by notification and conferral. If the Parties are unable to agree on a resolution of the dispute concerning the Defendant's compliance within 60 days after initial conferral, the United States may, without further notice to Defendants, seek enforcement of this Agreement with the United States District Court for the District of Arizona (the "Court"), through any appropriate form of relief. Any motion to enforce this Agreement shall be brought within one year of the occurrence of any alleged violations.

25. The Parties shall notify each other of any court or administrative challenge to this Agreement. In the event any provision of this Agreement is challenged in any

local or state court, removal to a federal court shall be sought by the Parties and transfer of venue to the United States District Court for the District of Arizona will be sought.

26. In response to requests for documents or data as provided herein, either Defendant may withhold from the United States any documents or data protected by the attorney-client privilege or the work product doctrine. Should a Defendant decline to provide the United States access to such documents or data based on attorney-client privilege and/or the work product doctrine, the Defendant shall inform the United States that it is withholding documents or data on this basis and shall provide the United States with a log describing the documents or data.

27. The Parties may make use of protective orders or agreements to ensure the confidentiality of any non-public information as appropriate and necessary. Other than as expressly provided herein, this Agreement shall not be deemed a waiver of any privilege or right a Defendant may assert, including the attorney-client communication privilege, attorney work product protections, and any other privilege, right, or protection recognized at common law or created by statute, rule or regulation, against any other person or entity with respect to the disclosure of any document.

## VI. ENTIRE AGREEMENT, SEVERABILITY, COSTS

28. This Agreement constitutes the entire agreement between the Parties with regard to the Second and Sixth Claims, and any portions of other claims arising out of or relating to Worksite Operations or Retaliation Claims of the Complaint in this action, and it supersedes any and all prior representations and agreements, whether oral or written, between the Parties with regard to those claims. No such prior representations or agreements may be offered or considered to vary the terms of this Agreement, or to determine the meaning of any of its provisions.

29. In the event that any provision in this Agreement is declared invalid for any reason by a court of competent jurisdiction, said finding shall not affect the remaining provisions of this Agreement.

30. Each party shall bear its own costs, fees, and expenses associated with the litigation concerning this action, United States v. Maricopa County, et al., No. 2:12-cv-981 (D. Ariz).

SIGNATURES OF THE PARTIES:

_____
Joseph M. Arpaio
Maricopa County Sheriff

_____
Steve Chucri
Chairman, Maricopa County
Board of Supervisors
ATTEST:

_____
Mark Kappelhoff, Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division

_____
Clerk of the Board    DEPUTY

_____
CHIEF Deputy County Attorney

SO ORDERED this _____6th_____ day of _November_ 2015.

_____
Honorable Roslyn O. Silver
Senior United States District Judge